18835

L. M. McCLARY and George B. Washington, Plaintiffs-Appellants, v. Rachel C. WITHERSPOON *et al.*, Defendants-Respondents, W. J. Cooper and T. S. Cooper, Defendants-Appellants.

(164 S. E. (2d) 220)

*Messrs. Rogers E. Harrell* and *Wendell O. Brown,* of Kingstree, *for Appellants, W. J. Cooper,* and *T. S. Cooper,*

*Messrs. William E. Jenkinson* and *Connor & Connor,* of Kingstree, *for Appellants, L. M. McClary* and *George B. Washington,*

*Jerome P. Askings, Jr., Esq.,* of Hemingway, *for Defendants-Respondents,*

November 6, 1968.

BRAILSFORD, Justice.

James S. Cooper died in 1895 seized and possessed of some three hundred acres of land in Williamsburg County and survived by five sons and five daughters. He undertook to provide by will for the division of his land among his sons, but the execution of the instrument intended as his will was fatally defective.

This action to partition the land was commenced in 1961. In the meantime, all of Cooper's children had died, nine of them leaving issue; a number of his grandchildren had died leaving issue, and some twenty-four deeds and mortgages affecting various interests in the land had been executed.

The plaintiff George Washington, a great grandson of James S. Cooper, claims an undivided .1909352 interest in

the land by inheritance and by purchase from various other descendants. The plaintiff L. M. McClary claims an undivided .3211613 interest in the land by purchase from various descendants. Most of the interests purchased by the plaintiffs are traced back to one of the daughters of James S. Cooper, but some have their source in one of the sons.

The complaint traces the devolution of the interest of each of the children of James S. Cooper to the date of the commencement of the action, concluding that forty-eight defendants have undivided interests in the land ranging from .0007696 thereof to .0761030 thereof. Happily, these calculations, as such, are not challenged. However, those defendants who claim their interests in the land under the sons of James S. Cooper deny that the descendants or remote grantees of his daughters have any interest therein. They rely upon an alleged parol agreement among the heirs of James S. Cooper to abide by the provisions of his unprobated will, and contend that, in the year of the father's death, the land was divided among the five sons, according to the general directions contained in the will whereupon each son took and retained possession of the parcel alloted to him. By their separate answers, the successors of each son claim title by adverse possession to the tract allotted to their predecessor. That is to say, possession in severalty by each of the five sons of a distinct tract is relied upon as establishing title by adverse possession to that tract.

The action was referred to Honorable LaNue Floyd as special referee by general order of reference. Except for a question affecting the interest of only one son, hereafter considered, the only issue tried before the referee was that raised by the answers referred to above. All of the testimony offered by those defendants claiming under the sons was in support of these pleas.

The special referee, after a careful review of the voluminous evidence, found that the claimed division among the sons and possession by them in severalty of the respective tracts

was "simply not borne out by the evidence." He found that "the conclusion is compelling that there was never any parol division * * *"; hence, no possibility of possession in severalty which could ripen title.

By exceptions to the report, the defendants charged that the referee erred in failing to find that the sons of James S. Cooper and their successors acquired title by parol partition of the property and possession thereunder.

The circuit court made no express finding as to the sufficiency of the evidence to establish the claimed division of the land among the sons and the possession of each son thereunder. The report was reversed on another theory. Tht court found that upon the death of James S. Cooper in 1895 his five sons took possession of his estate lands and remained in possession thereof jointly, to the exclusion of their sisters and of the sisters' successors, for more than forty years.* It was concluded "that the five sons of James S. Cooper, Sr. and their heirs are the owners of the land in proportions of undivided one-fifth interest each thereof * * *."

By necessary implication from the foregoing conclusion, the circuit judge joined the referee in rejecting the claims of partition and possession in severalty, ripening into title by adverse possession in each son to the parcel allotted to him. This concurrence should have resulted in affirmance of the report. Adherence to the theory on which the case was tried below is required on review. The decision of this court in White v. Livingston, 231 S. C. 301, 98 S. E. (2d) 534, demonstrates that this principle is fuly applicable on appeal to the circuit court from the report of a master or referee. Error in reversing the report on a theory of the case different from that on which it was tried and on a ground not raised by exception to the report requires reversal and makes it unnecessary to consider other

* The first of the sons to die survived his father by forty-one years. Four of the sisters died soon after the death of their father, two of these leaving small children.

objections urged by appellants to the judgment of the circuit court.

We turn now to the remaining question involved on the appeal. In 1902, Mingo J. Cooper, one of the sons of James S. Cooper, mortgaged his undivided interest in the land to a firm of adjoining landowners known as Cooper Brothers. At that time, only seven of the ten brothers and sisters survived, and Mingo's interest was described as being "a seventh interest in the .whole." This mortgage was foreclosed in 1911. The defendants W. J. Cooper and T. S. Cooper, no relationship to James S. Cooper, claim title to this interest. It is conceded that they have valid paper title under the purchaser at the foreclosure sale. The claim of these two defendants is challenged only by the answer of the heirs of Mingo J. Cooper. This answer pleads the division of the land among the five sons and Mingo's adverse possession of the tract allotted to him until his death in 1948, followed by possession of his heirs. The answer further alleges that neither W. J. Cooper, T. S. Cooper, nor any of their predecessors in title, ever asserted any rights under the 1911 foreclosure deed, and that such title as they may have had has been defeated by the adverse possession of Mingo J. Cooper and his heirs of the tract of land allotted to him in the division of the estate lands of James S. Cooper.

The referee found that the evidence failed to establish adverse possession of a distinct parcel of land by Mingo J. Cooper or his heirs, and held that W. J. Cooper and T. S. Cooper were entitled to the undivided interest in the property originally inherited by Mingo.

We quote the only exception to this finding: "That the Referee erred in not finding that heirs of Mingo Cooper acquired the tract of land in question by adverse possession in that the defendants had ousted W. J. Cooper and T. S. Cooper." The error assigned is in failing to find that Mingo acquired title by adverse possession to *the tract of land in*

*question,* meaning the distinct parcel allotted to him in the alleged oral partition. The court sustained this exception, finding that Mingo "continued in complete possession of this portion of the land until his death in 1951, and his heirs have continued their possession until the time of the commencement of this action."

We think that this conclusion is manifestly inconsistent with the court's overall conclusion, to which no exception has been taken, that there was no division of the land and no possession in severalty of distinct tracts by the brothers. The purchaser at the foreclosure sale acquired legal title to an undivided interest in the land as tenant in common with the heirs of James S. Cooper other than Mingo. Since, by the law of this case, there was no division of the property, it was impossible for Mingo to hold possession of any particular portion of it adversely to the purchaser without also holding it adversely to all of the tenants in common, a claim which has been rejected by both the referee and circuit judge.

Only those parties claiming through Mingo have pled adverse possession against W. J. Cooper and T. S. Cooper. Both this plea and the exception to the referee's contrary conclusion are dependent upon the discredited claims of partition and possession in severalty of distinct tracts. It would be quite illogical to sustain either after the rejection of the claims upon which they are founded.

We add that these claims, in our view, were soundly denied. The division plat relied upon was prepared in May, 1962, after the answers were filed. The legend states that the division lines were run to conform to the will of James S. Cooper and as pointed out on the ground by one of the heirs. No surveyor's marks were found on any of the division lines, and the plat is conspicious for its deviation from the general plan of division expressed in the unprobated will. It divides the land into seventeen tracts and allots from one to five noncontiguous parcels to the estate

of each of the five sons. This was obviously resorted to in an effort to justify scattered contemporary possession of the land by individuals claiming under the same son. The referee was fully justified in discrediting the plat entirely and, with it, the claim that the land had been divided among the brothers.

Reversed and remanded for further proceedings consistent herewith.

Moss, C. J., LEWIS and BUSSEY, JJ., and LIONEL K. LEGGE, Acting Associate Justice, concur.