16659

TALBOT v. MYRTLE BEACH BOARD OF ADJUSTMENT *ET AL.*

(72 S. E. (2d) 66)

*Messrs. Epps & Hoffman* and *J. Reuben Long*, of Conway, *for Appellants,*

*Messrs. Long, Long & Thames,* of Myrtle Beach, *for
Respondents,*

Aug. 12, 1952.

STUKES, Justice.

The municipality of Myrtle Beach enacted in 1947
a zoning ordinance under the authority of Sections
7390 *et seq.* of the Code of 1942. At that time the
appellants, who are husband and wife, owned and operated
(and now do) a motor court at the northwest corner of
38th Avenue and U. S. Highway 17, commonly called the
King's Highway and the principal thoroughfare of the town.
The wife, the appellant Lula E. Talbot, owned vacant con-
tiguous lots across 38th Avenue from the motor court which
included, as described in the pleadings, lot No. 2 of block
11-K of King's Highway Extension and is the southwest
corner of 38th Avenue and the highway. Record, folio 1072.
The latter property, with which this litigation is concerned,
was acquired in 1946 by deed containing a restrictive cov-
enant limiting the use of it to residential, clubhouse or
boarding house purposes. This proceeding is not to con-
strue or enforce the covenant but the fact of it was in evi-
dence. "It is worthy of notice that a zoning law cannot
constitutionally relieve land within the district covered by
it from lawful restrictions affecting its use, imposed by cov-
enants." 58 Am. Jur. 942, Zoning, sec. 4.

The area which included the motor court was zoned
by the ordinance as R-4, in which motor courts are
expressly permitted; but the lots across 38th Avenue
and thence South to 31st Avenue, on both sides of the
King's Highway, were placed in Zone R-1, which is the
most restricted residential zone. In this restricted residential
area a public restaurant or dining room is not permitted.
It was for the latter purpose that appellants sought a "vari-
ance" from the terms of the ordinance. Such is authorized

by Sec. 7396(3), quoting, "as will not· be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result *in* unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done." It is well-settled elsewhere, and there can hardly be contrary contention, that a restaurant is a business and as such is properly excluded from residential zones. *State ex rel. Szodomka v. Gruber,* 201 La. 1068, 10 So. (2d) 899; *City of Lincoln v. Foss,* 119 Neb. 666, 230 N. W. 592; *People on Complaint of Fullam v. Milray Corp.,* 225 App. Div. 860, 233 N. Y. S. 860. Moreover, it is obvious that a public restaurant presents more features that are objectionable to neighboring residents than does a motor court. However, a motor court is not allowed in Zone R-1, under the ordinance.

The city authorities rejected appellants' application and the action was reviewed by the Court of Common Pleas by certiorari. The matter was referred to the Master as special referee who took testimony and reccommended favorably to appellants, but the city's exceptions to the Master's report were sustained by the court, whence this appeal. The procedure followed is prescribed by the cited statue—Code sec. 7396(3).

The appeal is upon the broad ground that enforcement of the ordinance with respect to the lot in question (the failure of the municipal authorities to grant a variance as to it) amounts to an unconstitutional deprivation of property, and is therefore invalid. Particularly, it is urged that the questioned regulation of the use of the subject property does not comply with the provision of Code sec. 7392, which follows: "Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."

The regulation of the uses of property within municipalities, which is called zoning, began relatively late in this country, having had its beginning in France about a century ago under Napoleon III: Lewis, City Planning. Other European countries followed, and finally ours. The enabling statute of this State, which has been cited, has been in force since 1924 and several cases which arose under ordinances enacted pursuant to the authority of it have reached this court. They are conveniently collected and digested in 14 South Carolina Digest, Municipal Corporations, Key 601, page 30. The subject is well treated under the topic. Zoning, in 58 Am. Jur. 935, *et seq.* and in the footnotes there are references to several A. L. R. annotations in which many relevant decisions are digested.

From the cited text the following presently applicable generalizations are taken:

"One of the most firmly established principles in the field of constitutional law is that the wisdom of legislation is a matter exclusively for legislative determination. This principle has been applied to zoning laws, and courts have been declared to have nothing to do with the question of the wisdom, expediency, propriety, or good policy thereof. The courts may not interfere with the enactment or enforcement of zoning provisions for the sole reason that they may be considered unwise, as long as their requirements may not be classified as unreasonable, or as long as there is an apparent legal reason for the enacted requirements." 58 Am. Jur. 954, sec. 23.

"The matter is largely within the discretion of the legislative authority, which is presumed to have investigated and found conditions such that the legislation which it enacted was appropriate, so that if the facts do not clearly show that the bounds of that discretion have been exceeded, the courts must hold that the action of the legislative body is valid. In this respect, it has been declared that the municipal governing bodies are better qualified because of their knowledge of the situation to act upon those matters than

are the courts, which will not substitute their judgment for that of the legislative body." 58 Am. Jur. 956, 957, sec. 26.

"Zoning enabling statutes frequently authorize the division of municipalities into districts of such number, shape and areas as may be deemed suited for the purposes of the act. Under such a provision, the number and nature of districts created, as well as the boundaries thereof, are matters which lie within the discretion of the municipal legislative body, and the courts will not substitue their judgment for that of the legislature where there is a possible reason in support of the legislative zoning lines." 58 Am. Jur. 960, sec. 32.

"However, the fact that property in a restricted area adjoins or is close to property in a nonrestricted area does not necessarily render the ordinance invalid, since, if there is to be zoning at all, the dividing line must be somewhere, with the result that certain desirable neighborhoods adjoin others less desirable. It is also a general principle that the courts will not substitute their judgment for that of the legislature where there is a possible reason in support of the legislative zoning lines." 58 Am. Jur. 968, sec. 42.

"Under terms of particular zoning laws, restaurants are permitted in some specified zones, and prohibited in others. The validity of such a restriction or prohibition has been sustained." 58 Am. Jur. 1001, sec. 105.

"Judicial relief from the action of a zoning board of appeals, review, or adjustment may be secured in a proper case, whether such action consists of the denial or grant of an exception or variation in the application of zoning restrictions. However, the authority of the zoning board in this respect is a discretionary one, and its decision is generally upheld, whether the application for the variation is granted or refused." 58 Am. Jur. 1062, sec. 229.

A late and useful textbook is Yokley's Zoning Law and Practice, Michie, 1948. State and federal decisions are critically and succinctly reviewed. At pages 30, 31, the fol-

lowing is approvingly quoted from *American Wood Products Co. v. City of Minneapolis,* 8 Cir., 35 F. (2d) 657; "Governing bodies of municipalities clothed with authority to determine residential and industrial districts being better qualified by their knowledge of the situation to act upon such matters than are the Courts, they will not be interfered with in the exercise of their police power to accomplish the desired end unless there is a plain violation of the constitutional rights of citizens."

Illustrative of the fact that lines between zones must be fixed somewhere and there will always be nearby properties subject only to different uses, because in practice there is no "no man's land", is *Wilkins v. City of San Bernardino,* Cal. App., 162 P. (2d) 711, 717. In this case the creation of small business zones entirely within residential sections was declared valid and within the reasonable exercise of the police power of the City of San Bernardino, the court holding that the line between business and residential property must be drawn somewhere and that the mere fact that business property is located across the street from residential property, or even adjoining the residential property involved, does not determine that the ordinance is invalid or discriminatory.

The following is quoted from the opinion of the court: "The power to declare zoning ordinances (here, application of the ordinance—interpolated) unconstitutional only should be exercised where no substantial reason exists to support the determination of the city council. If the reasonableness of the ordinance is reasonably debatable the ordinance must be upheld."

A recent Kentucky decision is to the effect that the fact that property within a few feet of the plaintiff's lot was placed in a commercial zone while plaintiff's property was zoned for residential purposes would not establish that the plaintiff had been discriminated against. *Schloemer v. City of Louisville,* 298 Ky. 286, 182 S. W. (2d) 782.

Mr. Yokley concludes at pages 46, 47, from his review of the decisions, as follows: "Thus it may be seen that the courts have adopted a liberal attitude in permitting municipalities to restrict within proper limits the right of the individual to use his property as he pleases. If the limitations upon the use of property imposed by a zoning ordinance apply reasonably and fairly to all, they are vaild; and the individual hardship and loss must be borne in order to make possible the greater advantage to the community as a whole. The depreciation of property value by zoning does not render an ordinance void since the general welfare is superior in importance to the pecuniary profits of an individual."

Typical of the cases upon which the foregoing conclusion is founded and peculiarly applicable to the case *sub judice* is *City of Des Moines v. Manhatten Oil Co.,* 193 Iowa 1096, 184 N. W. 823, 828, 188 N. W. 921, 23 A. L. R. 1322, in which it was said, in many instances residential property owners could derive much larger incomes if they were permitted to devote the same to commercial purposes. The right, however, to restrict such areas has become the law in this and practically every jurisdiction of the United States. While such regulations frequently result in financial loss to property owners, they are based upon the idea that "the interests of the individual are subordinate to the public good." It was likewise held in *O'Rourke v. Teeters,* Cal. App., 146 P. (2d) 983, that a party makes a large investment in a city lot, which, at the time of purchase is free of restrictions, with the intent to use it for business purposes, does not invalidate a zoning ordinance subsequently adopted restricting the use of the property to residential purposes. The reasoning employed followed the earlier, leading case of *Village of Euclid v. Ambler Realty Co.,* 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016. The police power, of the exercise of which zoning is, cannot be thereby impaired. *Douglass v. City Council of Greenville,* 92 S. C. 374, 75 S. E. 687, 49

L. R. A., N. S., 958. The present appellants testified that
they bought the subject property before enactment of the
zoning ordinance with the intention of later erecting on it
an eating place which they would now lease to another for
public operation; but they purchased it subject to an incon-
sistent covenant, as has been seen.

At the foot of page 53 of Yokley there are cited
numerous state and federal decisions to the point that
there is a strong presumption in favor of the validity
of municipal zoning ordinances, when within the municipal
power as here; and, we add, in favor of the validity of the
application of them and the refusal by the municipal author-
ities to vary them upon the intercessions of landowners. The
latter flows from the presumption of validity with which any
ordinance is ordinarily clothed, 37 Am. Jur. 810, Municipal
Corporations, sec. 177; Annotation, Ann. Cas. 1916B, p.
502, which is, in turn, product of the like presumption which
follows a legislative enactment.

Footnotes to pages 322, 323, of Yokley, are replete with
citations of authorities to sustain the following: "The law
recognizes that there is a presumption that administrative
boards, such as a zoning board, will act fairly and with
proper motives and upon valid reasons upon an application
for a change in the use of premises or in connection with the
granting of a variance. However, this presumption of fair-
ness and correctness will fall and if favorable to a variance,
the same will be set aside where there is a clear abuse of
discretion by the board. It is a well settled proposition of
zoning law that a court will not substitue its judgment for
the judgment of the board. The court may not feel that th'
decision of the board was the best that could have be.
rendered under the circumstances. It may thoroughly o·
agree with the reasoning by which the board reached ·
decision. It may feel that the decision of the board was
substandard piece of logic and thinking. None the less, th.
court will not set aside the board's view of the matter jus·.
to inject its own ideas into the picture of things" And he.

pages 324, 325, likewise with respect to the following: "This, then, brings us to the general consideration of cases holding that the decision of a board of appeals will not be set aside unless its acts are arbitrary or illegal or in excess of the jurisdiction lawfully conferred on the board by statute. Zoning boards are given a wide discretion, but its actions are subject to review in case of an abuse of that discretion. Where the board of adjustment or appeals has acted after considering all the facts and circumstances of a particular case, the court should not disturb the findings of the board unless the board has acted arbitrarily or in the obvious abuse of its discretion or unless the board has acted illegally and in excess of its lawfully delegated authority. To support this proposition, the cases are legion."

In point is the following excerpt from the opinion in the recent case of *De Treville v. Groover, Mayor,* 219 S. C. 313, 329, 65 S. E. (2d) 232, 240: "It should be added that the power to declare an ordinance invalid because it is so unreasonable as to impair or destroy constitutional rights is one which will be exercised carefully and cautiously, as it is not the function of the courts to pass upon the wisdom or expediency of municipal ordinances or regulations."

Of course, the finding of the circuit court in the case in hand that there has been no unlawful discrimination against appellants by refusal of the application for a variance of the zoning ordinance and, therefore, no deprivation of them of their property, cannot be affirmed on account of the reluctance last referred to or on the presumption of valid municipal action alone; and we have carefully reviewed the voluminous evidence and considered the arguments of appellants. It would serve no useful purpose to fully state them. They have not convinced us of error by the trial court, whose decree will be affirmed.

Appellants have earnestly contended that the Myrtle Beach ordinance and map, which are in evidence constitute objectionable "spot" zoning. 58 Am. Jur. 965,

sec. 39. Yokley, Art. 3, p. 152. On the contrary, we think that this might be the result if the variance which appellants have sought were permitted; it would allow a single business establishment in a residential zone of considerable area which now contains no "spot". Courts cannot become city planners but can only correct injustices when they are clearly shown to result from the municipal action, which is not the case here. The decisions relating to spot zoning are rather against appellants than in their favor. Annotations, 128 A. L. R. 741 and 149 A. L. R. 292. Summary of them is stated in 149 A. L. R. 293, as follows: "So, generally speaking, it has been held that where an ordinance establishes a small area within the limits of a zone in which are permitted uses different from or inconsistent with those permitted within the larger, such 'spot zoning' is invalid where the ordinance does not form a part of a comprehensive plan of zoning or is for mere private gain as distinguished from the good of the common welfare."

Reliance is also had by appellants upon the comparatively early case of *Nectow v. City of Cambridge, 277 U. S. 183, 48 S. Ct. 447, 72 L. Ed. 842*, which however is inapplicable under its facts. There the zoning, which was held invalid by the Supreme Court, attempted to subdivide singly owned vacant property, placing a portion only of the owner's lot in a restricted residential zone, with adjoining property unrestricted and actually used for industry.

The exceptions are overruled.

Affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR, and OXNER, JJ., concur.