19040

Dera R. CONWAY, Appellant, v. The CITY OF GREENVILLE, S. C., David G. Traxler, Mayor of the City of Greenville; and Gus M. Smith, Joe F. Jordan, Thomas O. Lawton, W. Thomas Brockman, Reginald C. White, Jr., and J. Kenneth Cass, Members of the City Council of the City of Greenville, S. C., Respondents.

(173 S. E. (2d) 648)

*Messrs. Wofford & Snyder,* of Greenville, *for Appellant,*

98

W. H. Arnold, Esq., of Greenville, for Respondent,

April 10, 1970.

Lewis, Justice.

Plaintiff-appellant seeks in this action to require The City of Greenville, South Carolina, to rezone a portion of her property so as to permit the construction and operation of a shopping center thereon—a non-conforming use under the zoning ordinance of the city. Her claim is based mainly upon the contention that the property was being used for commercial purposes, consistent with her present application, at the time of its annexation to the city and that she thereby acquired a vested right to continue to so use it. The issues were referred to the Master in Equity for Greenville County, who, after a hearing, filed a report recommending that the relief sought be granted. On exceptions to the circuit court, the report of the Master was reversed and the complaint dismissed. This appeal by the landowner followed. The material facts are not in dispute.

Appellant, between 1953 and 1957, purchased several adjoining tracts of land which, when consolidated, made a tract of approximately sixteen (16) acres fronting on By-Pass Highway No. 291 in Greenville County. When ac-

quired, the back portion of approximately six (6) acres was located within the limits of the City of Greenville; but the front portion, situated adjacent to Highway No. 291 and consisting of approximately ten (10) acres, was not in the city limits. This appeal involves only the portion of the property lying outside the city limits when purchased.

The property, according to appellant's testimony, was acquired for the purpose of operating thereon, a construction business in which she and her husband (now deceased) were engaged. After the first purchases were made, they began the operation of their business on the land under the name of Conway Construction Company and it was later used by an affiliated company, the Conway-Calmes Construction Company. In 1954, an office building was completed on the property and subsequently two warehouses were constructed. In addition, a lake of approximately three or four acres in size was developed and two residences constructed adjacent thereto for use by members of the family. Other than these two residences for members of the owner's family, no other residential use has ever been made of the area involved in this appeal.

Appellant and her husband were engaged in a heavy steel erection and construction business. The business was a sizable operation, employing as many as two hundred (200) employees and owning considerable heavy equipment including motor and crawler cranes, draglines, air compressors, welding machines, trucks of various sizes, concrete pouring equipment, and equipment to repair boilers. In addition, heavy materials in considerable quantities were apparently accumulated in the operation of the business. While some equipment and materials could be stored in the warehouses, most of the equipment and some of the materials were too large and had to be parked or placed in the open on the property. Much of the suitable portions of the area were used at various times for the storage of materials and equipment, and most of the business activity was concentrated in the area next to Highway 291 and along the southern

border on both sides of a street designated as Greenland Drive. This use extended along both sides of Greenland Drive to the full depth of the property. While, admittedly, all of the tract was not actually used for business purposes, the dimensions of such use were indefinite.

While the property was being used in the manner hereinabove related, the area involved in this appeal was annexed to the City of Greenville on September 24, 1963. Upon annexation to the city, the property was, pursuant to the zoning ordinances, automatically zoned for use in an "A-1 Single-family dwelling district." Shortly thereafter appellant applied to the city for a rezoning of all of her tract of land. On May 12, 1964 the City Council rezoned the front portion, along Highway 291, to a depth of 250 feet into an "H Light industrial district"; but otherwise denied the application that all of the tract be so rezoned, leaving the remainder zoned in the "A-1 Single-family dwelling district." No appeal was taken from this action of the city. However, appellant, without interference by the city, continued to use the tract for the operation of the construction business just as it had been used prior to annexation.

Appellant later negotiated an agreement with interested parties for the construction of a shopping center fronting on Highway 291, which nessitated the use for such purpose of all of the area formerly lying outside the city limits. The plans for the shopping center will necessitate the removal of the residences occupied by the owner and the elimination of the lake. The portion of this area fronting on Highway 291 to a depth of 250 feet was already zoned "H Light industrial" under which a shopping center was a permitted use. This area however was too small for the construction of the planned shopping center and, in order to proceed, it was necessary to have the additional area rezoned for commercial use. Appellant accordingly filed an application for the rezoning of the required area. She asked that the area, upon which the shopping center was to be located, be rezoned into an "E-1 Shopping center district" which was a more

restricted classification than the "H Light industrial" classification into which the front 250 feet of the required property had been previously zoned.

While appellant's application for rezoning included a small area of her property which was located in the city limits at the time of its purchase by her, in view of the findings of the lower court and the exceptions, her right to use such area for commercial purposes is not involved in this appeal. The issues here, as previously noted, concern only the area located outside the city limits at the time of the purchase by appellant.

Appellant's rezoning application first went before the City Planning and Zoning Commission which unanimously recommended that it be granted and the property be rezoned as requested. Thereafter, the City Council rejected the application and recommendation of the zoning commission by a three to two vote. This action was thereafter timely brought by appellant.

The first and basic question to be decided concerns the right of appellant to use the entire property involved for business purposes.

We have held that, while a municipality has authority in the exercise of the police power to enact zoning ordinances restricting the use of privately owned property, such power is not unlimited and does not permit a municipality to impair or destroy vested property rights acquired prior to the annexation of property to the city. *James v. City of Greenville*, 227 S. C. 565, 88 S. E. (2d) 661. It was stated in the concuring opinion in the cited case that such power to restrict the use of privately owned property "does not extend to the supression or removal from a residence district of a lawful business already established there, in the absence of a factual showing that the continuance of such business would be detrimental to the public health, safety, morals or general welfare."

The city agrees that under the foregoing principle appellant had the right to continue the operation of the construc-

tion business on the property after it was annexed to the city. The parties disagree however as to whether such commercial use is to be regarded as extending to the entire area annexed to the city. This is the issue which we must resolve.

The city contends that the business use of appellant's property was confined to a limited area and should not be extended to cover the entire tract. Appellant's position is that the nature of the business use of the land prior to its annexation to the city was such that she acquired a vested right to use the entire tract for such business purposes. Admittedly, all of the area here involved was not actually being occupied in the operation of the construction business at the time of annexation.

The question of whether a partial use of a tract for a business purpose preempts the entire tract for such purpose must necessarily be determined from the facts of each case. The fact that the non-conforming use did not embrace the entire tract is not conclusive of the issue. It is generally stated that "the criterion is whether the nature of the incipient non-conforming use, in the light of the character and adaptability to such use of the entire parcel, manifestly implies an appropriation of the entirety to such use prior to the adoption of the restrictive ordinance." Anno: 87 A. L. R. (2d) 22. Rathkoff, The Law of Zoning and Planning, Section 2, p. 60-3; 101 C. J. S. Zoning § 192, p. 954; 58 Am. Jur., Zoning, Section 151.

The property fronts to the west on Highway 291; and a street, designated as Greenland Drive, runs generally along the southern border. While the major business activity centered along the southern portion to its full depth and along Highway 291, heavy equipment and materials were stored on various portions of the tract. Due to the nature of the business and the type equipment and materials required, the availability of a large open storage space was a necessity.

The tract covers approximately ten (10) acres. Of this area, the city has zoned approximately three acres along

Highway 291 into an "H Light industrial district." In addition, the city concedes that there is an area along the southern portion, not included in the above three acres, upon which appellant had the right to continue to operate her construction business. The extent of the latter area is not definitely defined. To the rear of the areas of major business activity, appellant developed a lake of about three or four acres and constructed two residences nearby for occupancy by the family. The city argues that the construction of the lake and homes conclusively establishes a residential use of that portion of the property and evidences the owner's intent to confine the business activities to the front portion of the property. We do not think that such conclusion follows under the present facts. The only residential use of the property was by the owner and her family and there is nothing in this record to indicate any intent to further extend such use. The fact that the owner occupied a residence on the premises upon which the business was operated was not inconsistent with the dominant character and use of the property for business purposes.

The character and adaptability of the entire tract in question was primarily for business use. As stated in the Master's report, Highway 291 on which appellant's property fronts is a heavily traveled commercial thoroughfare in the City of Greenville. It varies from four to six lanes in width. Both to the north and south of appellant's property, the land adjacent to this highway has been developed principally for commercial and industrial use. Such development extends to the north approximately one mile and to the south for two or three miles. While there are some residential uses of frontage on the road, such is the exception.

The adjacent properties to the north and south of appellant's tract, fronting on Highway 291, have been zoned for commercial and industrial use. The adjacent tract to the south has been zoned for industrial use for a depth from Highway 291 approximately equal to the depth of the area here involved. The adjacent land to the north has been so

zoned for a depth of approximately 250 feet from High-way 291 and to the rear of that is restricted for residential purposes. There is a 68 foot strip of appellant's land along the northern boundary subject to a power company right-of-way which is presently occupied by a high tension line of steel towers. Appellant agreed that the rear portion of her property, lying within the old city limits and not involved in this case, should remain zoned for residential purposes, which would constitute a buffer zone of a minimum of approximately 200 feet between the area here in question and the nearest residential development to the east.

The record shows that the value of the tract in question for single family residential development is approximately $2000.00 per acre and between $20,000.00 and $25,000.00 per acre for commercial use. The testimony fails to sustain the contention that the commercial use of the area would adversely affect the value of nearby residential property.

Under the foregoing facts, appellant acquired a vested right to use the property involved for the operation of a construction business thereon and such right extended to the entire area. The facts establish the character of the tract as business property and its adaptability to such use. The nature of its use, considered in this light, clearly implied an appropriation of the entire area for business purposes.

We recognize that the adoption of zoning ordinances is a legislative function and that a wide discretion rests with the governing authority of the municipality in determining the wisdom or expediency of such legislation. However, the determination of whether such ordinances deprive a citizen of constitutional rights is a judicial function and not legislative. And where an ordinance is clearly violative of constitutional rights, it is the duty of the court to so hold. *James v. City of Greenville, supra.*

The brief of the city raises the question as to the extent of our review of the factual issues, questioning whether the

action is legal or equitable in nature. We need not pursue the question for, in either event, the result would be the same under the conclusive factual showing in this record.

The city also argues that appellant has abandoned any right which she might have acquired to use the property for business purposes. The record does not sustain this contention.

The application for rezoning, out of which this litigation arose, was filed on April 24, 1968 and finally denied by the city on August 20, 1968. Appellant's husband, who was president of the construction business operated by them, died in September 1968, approximately six months after the rezoning application was filed and about one month after it was denied. Her husband had been in declining health during the last six years of his life and, because of this fact, the usage of the property for business purposes had gradually diminished. The activities of the construction business had not entirely ceased however when the application for rezoning was filed. After the death of appellant's husband in September 1968, the business was discontinued. Some of the buildings on the property were being rented for business purposes at the time of the hearing in the lower court.

It is well settled that the right to continue a nonconforming use my be lost by abandonment. In order to constitute abandonment, it must appear that there was a discontinuance of the nonconforming use with the intent to relinquish the right to so use the property. The question is largely one of intention and must be determined from all of the surrounding facts and circumstances, 101 C. J. S. Zoning § 198 *et seq.;* 58 Am. Jur., Zoning, Sections 153 and 154; Anderson, American Law of Zoning, Section 6.58 *et seq.* See also: *Witt v. Poole,* 182 S. C. 110, 188 S. E. 496.

Although there was a diminution in the business activities of the construction company, such was brought about by the illness of appellant's husband and not from any intent to abandon the use of the prop-

erty for business purposes. The discontinuance of the business occurred during the progress of the present litigation to require the city to recognize the nonconforming use and the only reasonable inference is that, but for the death of appellant's husband, the business would not have been discontinued at that time. While the particular business was discontinued, there was present no intent to abandon the nonconforming use of the property.

■ The closing of the business at the death of the husband was an involuntary cessation of use and did not constitute abandonment. This is true because, as stated in American Law of Zoning, *supra,* Section 6.59, "where the cessation of use is not the voluntary act of the user, the requisite intent to abandon does not exist."

Under all of the circumstances, there was no abandonment of the business use of the property.

The question now arises as to the proper classification of the area in question for zoning purposes. It has been zoned for a depth of 250 feet in an "H Light industrial district" and the remainder in an "A-1 Single-family dwelling district." Appellant seeks in this action to have the entire tract zoned for the construction and operation of a shopping center.

The result of our holding herein is that appellant, at the time of the annexation of the property to the city, had acquired a vested right to use the entire area for the purpose of operating her construction business thereon. The action of the city and the judgment of the lower court were clearly influenced by an erroneous conclusion as to the rights acquired by her to use the entire area in accordance with the prior business usage. Since the right of appellant to now use the property for a shopping center is for the city to determine, subject only to review by the court, such question should be remanded for determination by the city in the light of the vested rights which we hold were acquired by appellant.

The judgment of the lower court is accordingly reversed and the cause remanded to the lower court for the issuance of an appropriate order directing the respondent city to reconsider the application of appellant in accordance with our holding herein.

Reversed and remanded with directions.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.