The CITY OF MINOT, a municipal corporation, Plaintiff and Appellant,

v.

H. H. FISHER et al., Defendants and Appellees.

Civ. No. 8890.

Supreme Court of North Dakota.

Dec. 4, 1973.

Bosard, McCutcheon, Kerian, Schmidt & Holum, Minot, for plaintiff and appellant.

McGee, Hankla, Backes & Wheeler, Minot, for defendants and appellees.

PAULSON, Judge.

This is an appeal from a judgment of the district court, which judgment dismissed an action by the City of Minot to enjoin the defendants from using a structure in a nonconforming manner.

The evidence discloses that on November 3, 1958, the City of Minot passed Zoning Ordinance No. 1149. This zoning ordinance affected an area of Minot in which was located a mortuary owned by Robert A. Russell, now deceased. The affected area became a single-family residential district and the mortuary thus became nonconforming because it was allowable only in commercial areas, under the zoning ordinance.

The evidence further discloses that the building in question was operated as a mortuary from before the date of passage of Zoning Ordinance No. 1149 until the spring of 1969. From some time in 1967 until some time prior to March 4, 1969, the mortuary was known as the Daniels-Russell Mortuary and was operated by Jerome Daniels. On March 4, 1969, the City of Minot shut off the supply of water to the mortuary building and from that date until January 27, 1972, when the defendant North Central Mental Health and

Retardation Center moved in, the building was vacant and was unused for any purpose. During the period of vacancy the building was twice flooded and repairs were made by the defendant Norma A. Russell. Mrs. Russell, during this period, was also attempting to sell the building; and prospective purchasers included a church group. On July 15, 1971, the defendant, H. H. Fisher, secured an option to purchase the building and immediately tried to sell or rent it. He testified that he tried to sell the mortuary equipment to other morticians, since other prospective purchasers or tenants interested in the building evidenced no interest in purchasing such equipment.

Section 23–0317(1)(c) of the Minot Zoning Ordinance provides:

"Whenever a nonconforming use of a building or portion thereof is discontinued for a continuous period of two years, any future use of such building or portion thereof shall be in conformity with the regulations of the district in which such building is located."

■ Intent to abandon, and overt acts of abandonment, are the elements of abandonment, and the City of Minot [hereinafter City] asserts that the element of intent to abandon should not be necessary to prove, due to the presence in the ordinance of a definite period of time of discontinuance of a nonconforming use that prohibits the resumption of such nonconforming use.

The appellees, on the other hand, assert that despite the presence in the ordinance of a definite period of discontinuance of a nonconforming use, both elements of abandonment must be proved before a party can be denied a nonconforming use of property because of discontinuance of such nonconforming use for two years. The district court agreed with the appellees and dismissed the City's action. The City appeals from that judgment of dismissal and presents the following issues for review:

"1. The Court erred in requiring proof of the element of abandonment to discontinue a nonconforming use under the Minot ordinances.

"2. The Court erred in failing to comply with Rule 52(a) [N.D.R.Civ.P.] with respect to finding facts specially and stating separately its conclusions of law in the matter of a preliminary injunction.

"3. The Court did not comply with Rule 52(a) and state its conclusions of law separately and therefore the Judge's memorandum opinion should serve as the conclusions of law under Rule 52(a).

"4. The Court erred in admitting testimony considering the costs of the original structure and money to renovate and repair the structure after the flood.

"5. The Court erred when it admitted testimony respecting the designation as 'commercial' in the assessor's records."

There appear to be three judicial views relevant to the first issue. One view has been that there must be shown an intent to abandon a nonconforming use before its resumption can be prohibited; this despite the presence of an ordinance containing a specified period of discontinuance designed to prevent resumption of a nonconforming use. Representative of this holding is the case of Dubitzky v. Liquor Control Commission, 160 Conn. 120, 273 A.2d 876 (1970), wherein Dubitzky lost a permit to sell liquor in a drugstore because of the actions of his lessee. The ordinance involved in the *Dubitzky* case provided that in any building where liquor was sold, where such use "has been voluntarily discontinued or has been voluntarily inoperative for a period of thirty (30) days, such use shall not be resumed except in conformity with the provisions of paragraph 281.3". Paragraph 281.3 [East Hartford Zoning Ordinance] prohibited the sale of liquor within 1500 feet of another liquor outlet. Dubitzky's lessee ceased to sell li-

quor more than thirty days before the termination of his lease, which cessation resulted in the Liquor Control Commission denying Dubitzky's application for a liquor license. Dubitzky was diligent in attempting to show that he had no intention of abandoning his nonconforming use of the building for the sale of liquor and that he intended to resume the sale of liquor on such premises at his first opportunity. Dubitzky's request for a liquor permit was denied by municipal authorities; however, after several appeals, the Supreme Court of Connecticut decided that his liquor permit should have been granted. The Connecticut court stated, in *Dubitzky, supra,* 273 A.2d at 879:

> "We have held that the word 'discontinued' in ordinances prohibiting the resumption of a nonconforming use which has been discontinued for a specified period is equivalent in meaning to 'abandoned', and evidence of an intent by the owner permanently to cease the use is required, and we have held that the mere fact of nonuser for a period is insufficient to constitute an abandonment.".

A second judicial view on this issue is that the inclusion of a discontinuance period in a zoning ordinance on nonconforming uses removes the necessity of proving intent to abandon such a use, and, therefore, passage of the required discontinuance period of time alone prevents the resumption of the nonconforming use. This rule was applied in the case of Canada's Tavern, Inc. v. Town of Glen Echo, 260 Md. 206, 271 A.2d 664 (1970), where the ordinance in question read, in pertinent part:

> ". . . No nonconforming use, once abandoned, shall thereafter be re-established. For the purpose of this section, 'abandoned' shall be defined as the *cessation* of a nonconforming use for a period of six months or more."

In *Canada's Tavern* the plaintiff owned a building in which a restaurant was operated, which constituted a nonconforming use in its area. The plaintiff in *Canada's Tavern* rented the building, but it became vacant and was unused as a restaurant for a period in excess of six months. The County Board of Appeals found that the plaintiff in *Canada's Tavern* had been diligent in her efforts to lease the building and decided that the certificate of occupancy was properly issued to the new lessee. A trial court reversed the board's decision and the Maryland Court of Appeals affirmed and denied the certificate of occupancy. The decision to deny the certificate of occupancy was made despite the fact that the plaintiff had been diligent in attempting to find a tenant for the building.

With respect to the ordinance in question in *Canada's Tavern, supra,* 271 A.2d at 666, the Maryland Court of Appeals said:

> "We think the Council, having in mind a larger purpose, intended to align itself with those local governments which have found it desirable to delete the factor of intent in respect of the abandonment, discontinuance or cessation of nonconforming uses rather than continuing to run the gamut of its judicial determination in a succession of infinitely variable factual situations."

For a similar holding, see State ex rel. Peterson v. Burt, 42 Wis.2d 284, 166 N.W. 2d 207 (1969).

A third judicial view on this issue is represented by the case of Marchese v. Norristown Borough Zoning Board of Adjustment, 2 Pa.Cmwlth. 84, 277 A.2d 176 (1971) [the Pennsylvania Commonwealth Court is an appellate court composed of seven judges]. In *Marchese,* the ordinance involved read as follows, in pertinent part:

> "Whenever a nonconforming use of a building or portion thereof, has been discontinued for a period of at least one (1) year, such nonconforming use shall not thereafter be re-established, and the future use shall be in conformity with the provisions of this Ordinance." [Ar-

ticle IV, § 19, subsec. 5 (approved January 1, 1956), Borough of Norristown Zoning Ordinance.]

The building in question in the *Marchese* case was a large garage, the use of which was nonconforming under the ordinance. The building was first used for daily parking of a contractor's trucks and its use was later changed to a more restrictive one of seasonal storage of specialty contracting equipment with infrequent minor maintenance work being done there. The owner subsequently tried to lease the building for a less restrictive nonconforming use. The trial court in *Marchese* affirmed the decision that the nonconforming use was lost through abandonment, since the building was not used from the fall of 1961 until January 9, 1968—well over the one-year period set forth in the ordinance. The appellate court in the *Marchese* case affirmed the trial court and established the rule, in 277 A.2d at 183:

"But where, as here, a one-year time limitation on the right to resume the nonconforming use is imposed by the zoning ordinance, the intention to surrender the right is presumed *from the expiration of the designated period.*

. . . . . .

"We do not feel that the one-year limitation period is unreasonably short, nor do we foresee injustice in giving rise to this presumption as long as this one-year limitation is not applied in situations where the cessation of use was beyond the control of the property owner."

■ The third judicial view of the loss of nonconforming uses is, we believe, the most equitable. This view presumes abandonment after the designated period of nonuse has passed, but avoids a due process challenge by not applying the presumption of abandonment in situations where the cessation of use was beyond the control of the property owner.

The court, in *Marchese, supra,* 277 A.2d at 186 [quoting from Appeal of Lord, 368

Pa. 121, 125–126, 81 A.2d 533, 535 (1951)], said:

"'"It is now well settled that zoning acts and ordinances passed under them are valid and constitutional as structural or general legislation *whenever they are necessary for the preservation of public health, safety, morals or general welfare, and not unjustly discriminatory, or arbitrary, or unreasonable, or confiscatory in their application to a particular or specific piece of property.'"* [Emphasis in original.]

■ We believe that the ordinance in question in the instant case, when interpreted according to this third judicial view of not applying the presumption of abandonment in situations where the cessation of use was beyond the control of the property owner, is a reasonable and nonconfiscatory ordinance. Some situations that have been held to be beyond the control of the property owner are:

". . . war . . . fire; hurricane; flood; financial inability of the owner to continue in business; inability to find a tenant desirous of using the premises for a purpose permissible as a nonconforming use; . . . non-use because of necessary repairs." *Marchese, supra,* 277 A.2d at 185, Note 9.

■ In the instant case, there is evidence that indicates that the failure of the building to be used in a nonconforming manner was caused by circumstances beyond the control of the owner. Not long after the last tenant vacated the building in March of 1969, there occurred a very serious flood in Minot which damaged the building extensively. This flooding necessitated repairs to be made to the building before it could be used. It appears from the testimony given at the trial that these repairs were still being made late in 1969. In March of 1970, the owner, the Robert A. Russell Trust, being unable to find a tenant to carry on the mortuary business, advertised the building for sale through lo-

cal realtors. In July of 1971, the defendant H. H. Fisher, after securing an option to purchase the building, immediately set about finding a tenant or purchaser. In January of 1972, the present tenant, the North Central Mental Health Retardation Center, entered upon the premises. Under Minot City Ordinance § 23–0317(1)(a), the change in use from that of a mortuary to that of an office building or a clinic is a permissible change, since in this instance an office building or a clinic is a more restrictive use than that of a mortuary.

■ At all times relevant in the instant case the owner of the building was attempting to find a suitable tenant or purchaser, or was repairing the building. See subsection (1)(d), § 23–0317, of Minot Zoning Ordinance. There are no indications of a lack of diligence on the part of the owner in attempting to find a suitable tenant for the building, and we therefore believe that the apparent presumption of abandonment created by the passage of two years without the building being used should not be applied in this case and that the present nonconforming use should be permitted to continue. We so hold.

With regard to the second and third issues presented by the appellant for review, quoted *supra,* we believe that the trial court has complied with Rule 52(a), N.D. R.Civ.P., which reads as follows:

"*Effect.* In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; and in granting or refusing temporary injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. *If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. . . .*" [Emphasis added.]

■ The trial court found the facts specially as required by Rule 52(a). These findings appear under separate headings in the judgment roll filed in this court. The conclusion of law stated thereon was concise. However, if the conclusion of law stated under the heading of Conclusion of Law in the judgment roll is insufficient, its inadequacies are more than compensated for by the memorandum opinion filed by the trial judge. We are unable to find that the trial court's findings of fact are clearly erroneous and we therefore affirm them. The conclusions of law stated in the trial court's memorandum opinion, though not set out exactly as this court has hereinbefore set them forth in this opinion, are also correct.

■ With regard to the fourth and fifth issues for review, we cite our holding in paragraph 7 of the syllabus in Grenz v. Werre, 129 N.W.2d 681 (N.D.1964):

"Error is never presumed upon appeal. The burden resting upon appellant is not sustained by showing mere error; he must show the error was prejudicial."

The burden of proving prejudicial error is, we believe, especially difficult in a case tried to the court. In light of the thorough and extensive memorandum opinion filed by the trial court in this case, we are unable to say that the appellant's case was prejudiced by the trial court's admission into evidence of testimony concerning the original cost of the building, the money spent to repair it, and the fact that the City of Minot still carried the subject building as commercial in the city assessor's records.

The evidence to which the appellant objects, though possibly objectionable as to relevancy, is not prejudicial. The memorandum opinion filed by the trial court herein contains a discussion of the factual situation in the instant case, as well as many cases on the law of nonconforming uses and the termination of such uses by ordinance. From this memorandum opinion it is evident that the trial court was not influenced in its decision by the evidence objected to by the appellant City of Minot. There was, therefore, no prejudicial error committed by the trial court.

The judgment of the trial court is, in all things, affirmed.

ERICKSTAD, C. J., and TEIGEN, VOGEL and KNUDSON, JJ., concur.