## 20774

Estate of Daniel L. MAGUIRE, Jr., Appellant, v. CITY OF CHARLESTON, South Carolina, and The Board of Adjustment for the City of Charleston, and Ruth Williams, Ed Ball, Harold Simmons, Marcus Hunder, Leonard Krawcheck, John McCrady, constituting members of said Board, Respondents.

(247 S. E. (2d) 817)

*Leonard L. Long, Jr.,* and *Ellison D. Smith, IV,* Charleston, *for appellant.*

*William B. Regan,* Charleston, *for respondents.*

October 4, 1978.

NESS, Justice:

The question is whether a building in the City of Charleston may be used as a doctor's office as it once was although that use would now be a nonconforming one under the applicable zoning ordinances. The trial court concluded that use as a doctor's office could not be resumed. We affirm.

Dr. J. T. Hiott constructed the structure in question in 1941 and used it as his office until his death in 1963. The premises were then leased for use as a doctor's office until late 1964. In February of 1965, Dr. Hiott's son, J. T. Hiott, Jr., began occupying the structure as a residence. The ap-

plicable zoning ordinances were amended on October 1, 1966, to restrict the area to residential use only.

Dr. Daniel L. Maguire, Jr., purchased the property in August of 1971 and commenced using the premises as a doctor's office. When Maguire subsequently sought a permit from the City to make certain improvements to the premises, the permit was denied on the ground that the area was not zoned for office use. The matter was appealed to the circuit court and referred to a master who ruled in favor of Maguire.[1] This appeal followed the circuit court's reversal of the master's ruling.

Section 54-10 of the Charleston City Code relating to nonconforming uses of property provides:

"(1.) The lawful use of land existing at the time of the adoption of this chapter, or of an amendment thereto, although such use does not conform to the provisions thereof, may be continued; but if such nonconforming use is discontinued, as evidenced by lack of use for a period of at least one year or by substitution of a conforming use, any future use of said land shall be in conformity with the provisions of this chapter.

\* \* \* \* \*

(4.) Whenever a nonconforming use of a building has been changed to a conforming use, such use shall not thereafter be changed back to a nonconforming use.

(5.) Whenever a nonconforming use of a building, or a portion thereof, has been discontinued, as evidenced by the lack of use, or vacancy for a period of at least one year, or by substituting a conforming use, such nonconforming use shall not thereafter be re-established and the future use shall be in conformity with the provisions of this chapter."

Dr. Maguire purchased the property with constructive notice of the amended zoning regulations and, inescapably, with notice of the use of the property. However, Dr. Ma-

---

[1] Dr. Maguire died prior to the issuance of the master's report and his estate was substituted as petitioner.

guire's Estate seeks to avoid the zoning law by asserting that J. T. Hiott, Jr., who occupied the premises as a residence, was a mental incompetent. The Estate asserts that as an incompetent, young Hiott was incapable of forming the requisite intent to abandon the earlier use of the property.

The mental incompetency of young Hiott during all times in question is undisputed. However, we see no reason to allow the appellant Estate to take advantage of Hiott's disability. Had a competent person been residing in the premises, the estate of Dr. Maguire would be foreclosed from its attempt to avoid the zoning regulations which existed at the time of purchase.

We conclude that Dr. Maguire, who purchased the property five years after the area was restricted to residential use, should not be allowed to reap the benefits of the prior occupant's incompetency. Dr. Maguire's Estate may not circumvent municipal zoning law by asserting young Hiott's disability.

Affirmed.

LITTLEJOHN and GREGORY, JJ., concur.

LEWIS, C. J., and RHODES, J., dissent.

RHODES, Justice (dissenting) :

The earliest zoning measures enacted in this country declared that nonconforming uses of property would be terminated after such uses had been "abandoned". As a legal term of art, "abandonment" was uniformly held to consist of two elements: (1) An intent on the part of the property owner to permanently relinquish the nonconforming use; and (2), an overt act, or failure to act, manifesting abandonment. In an attempt to avoid the problems inherent in proving intent, some cities enacted zoning measures which provided for termination of nonconforming uses after they had been "discontinued". However, because the courts have generally construed "discontinuance" as being synonymous with "abandonment", some municipalities are now resorting to a third

type of measure in an attempt to avoid intent problems and promote the speedy elimination of nonconforming uses. Called "discontinuance—time limitation" acts, these measures provide that a nonconforming use is terminated after a specified period of time in which the nonconforming use has not been exercised.

See 82 Am. Jur. (2d), Zoning and Planning §§ 214-216 (1976).

The Charleston enactment is a "discontinuance—time limitation" measure. As reflected in the cases we have examined and as set out in an excellent discussion by the Supreme Court of North Dakota in *City of Minot v. Fisher,* 212 N. W. (2d) 837 (N. D. 1973), these "discontinuance —time limitation" measures have been subjected to three different interpretations by the courts.

One interpretation is that "discontinuance" is synonymous with "abandonment" and, even though the time limitation period has run, an intent to abandon or relinquish the nonconforming use must still be proved before such use is terminated. *Dubitzky v. Liquor Control Commission,* 160 Conn. 120, 273 A. (2d) 876 (1970).

Another interpretation is that an intent to abandon need not be proved; passage of the discontinuance time period, alone, extinguishes the nonconforming use, *Canada's Tavern, Inc. v. Town of Glen Echo,* 260 Md. 206, 271 A. (2d) 664 (1970).

Under the third interpretation, which was adopted by the court in *Minot,* upon expiration of the discontinuance time period, a presumption arises that the property owner intended to relinquish the nonconforming use; however, the presumption does not apply if the cessation or non-exercise of the nonconforming use is due to circumstances beyond the control of the property owner, *Merchese v. Norristown Borough Zoning Board of Adjustment,* 2 Pa.Cmwlth. 84, 277 A. (2d) 176 (1971).

The first interpretation was applied to the City of Charleston ordinance by the master while the circuit court followed the second view. I would adopt the third construction.

As the court in *Minot, supra,* stated: "The third judicial view of the loss of nonconforming uses is, we believe, the most equitable. This view presumes abandonment after the designated period of nonuse has passed, but avoids a due process challenge by not applying the presumption of abandonment in situations where the cessation of use was beyond the control of the property owner." 212 N. W. (2d) at 841; *accord, Marchese, supra;* and see dissenting opinion in *Canada's Tavern, supra.* I agree. Further, I feel that this view more nearly accords with our prior decision in the case of *Conway v. City of Greenville,* 254 S. C. 96, 173 S. E. (2d) 648 (1970). Although *Conway* involved the issue of intent to abandon and did not involve the type of zoning ordinance under review in the present action, we held in that case that a nonconforming use was not extinguished when the cessation of such use was due to reasons beyond the control of the property owner.

The mental incompetency of Hiott during all times in question is undisputed. It is only logical that before a presumption of intent to relinquish a nonconforming use can prevail, the person to whom the intent is to be attributed should, himself, legally have the mental capacity to form that intent if, as here, he has no guardian or committee to exercise control over the property.

I would reverse.

Lewis, C. J., concurs.