2304

Jessie GURGANIOUS, Sr., Appellant v. CITY OF BEAUFORT
and City of Beaufort Board of Architectural Review, Respondents.

(454 S.E (2d) 912)

Court of Appeals.

*James H. Moss* and *H. Fred Kuhn, Jr.*, both of *Moss & Kuhn*, Beaufort, *for appellant.*

*William B. Harvey, III*, of *Harvey & Battey*, Beaufort, *for respondents.*

Heard Dec. 7, 1994; Decided Feb. 13, 1995.

Reh. Den. Mar.15, 1995.

HOWARD, Acting Judge:

Jessie Gurganious, Sr., appeals from a circuit court order upholding the decision of the Board of Architectural Review (BOAR) for the City of Beaufort, which denied Gurganious's application for a certificate of appropriateness to erect a chain link fence on property in the Historic District. We affirm.

Gurganious owns a corner lot in the City's Historic District at the intersection of Boundary and Charles streets. Prior to August 1, 1988, a home was located on the lot, and a fence surrounded the back portion of the lot, joining two corners of the home.

On August 1, 1988, fire destroyed the home and the fence. From August 1, 1988 until April 1991 there was no fence on the northern and western boundaries of the lot.

Gurganious operates a taxicab business and wrecker service from a building on a lot adjacent to the subject property.

In 1991, the City notified Gurganious of complaints of wrecked and inoperable cars left on the right-of-way of Charles Street. In April 1991, Gurganious built a 6 to 8-foot high chain link fence with a roll-back gate, along the northern and western boundaries of the property. Gurganious had neither a City building permit nor a certificate of appropriateness from the BOAR to erect the chain link fence.

On May 7, 1991, Michael DuBois, director of the Beaufort Department of Codes Enforcement, notified Gurganious that the fence violated the City's zoning laws. Gurganious wrote DuBois stating he had erected the fence as a replacement for the one destroyed when the home burned and he would have the fence "screened" as soon as possible. Gurganious also requested a ninety-day extension in which to resolve the problem. Eighty-three days later DuBois wrote Gurganious and enclosed an application to the BOAR for Gurganious to seek approval of the fence. On August 5, 1991, Gurganious applied to the BOAR for an after-the-fact approval and certificate of appropriateness for the fence.

The BOAR wrote Gurganious on September 12, 1991, advising him the application was denied "because the chain link fence doesn't fit the guidelines of the Beaufort Preservation Manual and Supplement." The BOAR advised Gurganious to remove the Fence immediately.

Gurganious petitioned the circuit court for review of the decision. Because the record was incomplete and did not allow for adequate review, the court remanded the case to the BOAR for a hearing *de novo*. The court ordered the BOAR to create a record and prepare an order, with findings of fact and conclusions of law, which would enable the court to intelligently review the case on appeal.

Following remand, the BOAR conducted a hearing and again denied Gurganious's application. In its letter to Gurganious, the BOAR outlined the following reasons for denying his application.

> (1) Even if the fence replaced an existing fence which had been destroyed, the prior fence was destroyed over one year prior to the construction of the new fence, so that the nonconforming use lost its "grandfathered status under § 5-6108(2) of the City Ordinance.

(2) The new fence was located in a different place than the prior fence, so that it was a "new construction:

(3) Gurganious did not obtain permission from the BOAR or a building permit to construct the fence. Even if DuBois had told Gurganious he could build the fence (which DuBois denied), he would have had no authority to issue a permit because the fence violated § 5-6120 of the City Ordinances in that it obstructed driver vision between the heights of three and ten feet within twenty-five feet of the intersection of the street right-of-way. In any event, the BOAR found as a fact DuBois made no such representation.

(4) The existing fence was accordingly constructed without a building permit and without a certificate of appropriateness from the BOAR. The Beaufort Preservation Manual (Milner Report) and its Supplement, which the BOAR uses as a guideline for its considerations, do not recommend use of chain link fences at corner properties within the Historic District. The BOAR held the guideline should be followed in this case.

Accordingly, the BOAR ordered Gurganious to remove the fence.

Gurganious once again sought judicial review of the BOAR's decision. The court affirmed the BOAR's conclusion that the fence was not a grandfathered nonconforming use, noting that whatever fence existed prior to April 1991 had been destroyed over one year before. The court also noted a factual dispute existed over whether DuBois told Gurganious and his son they could construct a replacement fence. The court added that even if DuBois had made this representation, construction still required a building permit and under § 5-6120 DuBois could not have issued one for the fence. The court also found the BOAR based its decision on the Milner Report's recommendation against chain link fences. The court concluded the BOAR's action was supported by substantial evidence and had a legal basis, and accordingly the decision was affirmed. This appeal followed.

## I.

Initially, Gurganious argues the trial court used an improper standard of review. South Carolina Code Ann. § 5-23-340 (1976) allows the circuit court to issue a writ of certiorari to review a decision by a board of architectural review. Gurganious correctly notes the scope of review under this process includes the authority to correct errors of law, as well as findings of fact which are not supported by the evidence. Gurganious asserts the trial court employed a higher standard which he claims is only applicable to zoning legislative action, whereby a decision is reversed only if it is found to be arbitrary and unreasonable and the decision of the board must be upheld as long as it is "fairly debatable." *See Knowles v. City of Aiken*, 305 S.C. 219, 407 S.E. (2d) 639 (1991).

In *Talbot v. Myrtle Beach Bd. of Adjustment*, 222 S.C. 165, 72 S.E. (2d) 66 (1952), the seminal case addressing review of zoning decisions in this state, the Supreme Court reviewed a circuit court decision based upon a writ of certiorari. There, the court recognized the wide discretion granted to zoning boards and ruled the boards' decisions should not be interfered with unless arbitrary. *Id.* In *Hodge v. Pollock*, 223 S.C. 342, 348, 75 S.E. (2d) 752, 754-55 (1953), in which the Supreme Court similarly reviewed a circuit court decision based on a writ of certiorari to a zoning board, the court quoted 58 Am. Jr. *Zoning* Section 231, saying, "[T]he decision of the zoning board will not be upheld where it is based on errors of law, or fraud, or where there is no legal evidence to support it, or where the board acts arbitrarily or unreasonably, or in a discriminatory manner or where, in general, the board has abused its discretion." More recently, in *Fontaine v Peitz*, S.C. 536, 538, 354 S.E. (2d) 565, 566 (1987), the Supreme Court specifically addressed the circuit court's review of a decision by a zoning board, stating, "The circuit court should not disturb the findings of the board unless the board has acted arbitrarily or in an obvious abuse of discretion, or unless the board has acted illegally or in excess of its lawfully delegated authority." The court then explained that "[a]n abuse of discretion occurs when [a decision] is based upon an error of law or, when based upon factual conclusions, is without evidentiary support." *Id.* at 538, 354 S.E. (2d) at 566.

We therefore agree that the trial court, when reviewing a decision by a board of architectural review, should act where the BOAR has abused its discretion by committing errors of law or bases its decision on findings of fact which are not supported by the evidence. To the extent the BOAR's decision is unsupported by the evidence or is clearly erroneous, its decision is not fairly debatable but is instead arbitrary and an abuse of discretion. The trial court correctly identified and employed this standard. The court first recognized it must "leave the [BOAR's] decision undisturbed if the propriety of that decision is even 'fairly debatable.' " Order of Judge Jackson V. Gregory, June 27, 1993 (quoting *Knowles v. City of Aiken*, 305 S.C. 219, 407 S.E. (2d) 639 (1991)). Then at the conclusion of its order, the trial court specifically found that "there was substantial evidence and legal basis for the BOARD's (sic) denial of the Plaintiff's after-the-fact application for a Certificate of Appropriateness." The BOAR's action, therefore, was fairly debatable and properly upheld. Furthermore, our standard of review of the BOAR's decision is the same as that of the trial court, and we reach this same conclusion. *See Fairfield Ocean Ridge, Inc. v. Town of Edisto Beach*, 294 S.C. 475, 366 S.E. (2d) 15 (Ct. App. 1988) (the appellate court will not reverse the circuit court's affirmance of the BOAR unless the BOAR's findings of fact have no evidentiary support or the BOAR commits an error of law).

## II.

Gurganious next alleges the BOAR erred as a matter of law in failing to make any finding the structure would be detrimental to the interests of the city or against the public interests of the city. We disagree.

In its letter disapproving the fence, the BOAR specifically noted the fence "constitutes a violation of [Beaufort City Code of Ordinances § 5-6120] by obstructing driver vision between the heights of three and ten feet within twenty-five (25) feet of the intersection of the street right-of-way." Furthermore, the BOAR recognized that "[t]he Milner Report and its Supplement do not recommend the usage of chain link fencing at corner property within the Historic District." The Milner Report, according to § 5-6158, is the official guide for the BOAR in determinating the appropriateness of any struc-

ture within the Historic District. We can think of no clearer expression of the public interests of a city than the privileges and prescriptions delineated in its City Code. As such, the BOAR clearly found Gurganious's fence was against the public interests of the city.

## III.

Gurganious's third contention centers on the amount of evidence presented that the fence was inappropriate to the Historic District or detrimental to the city. Gurganious claims there was a "total lack of evidence" that the fence was inappropriate or detrimental to the interests of the city. We disagree.

We give great deference to the decisions of those charged with interpreting and applying local zoning ordinances. *Purdy v. Moise*, 223 S.C. 298, 75 S.E. (2d) 605 (1953). The appellate court is not free to substitute its judgment for that of the BOAR. *Talbot v. Myrtle Beach Bd. of Adjustment*, 222 S.C. 165, 72 S.E. (2d) 66 (1952). Accordingly, we will not reverse the circuit court's affirmance of the BOAR unless the BOAR's findings of fact have no evidentiary support or the BOAR commits an error of law. *Fairfield Ocean Ridge, Inc. v. Town of Edisto Beach*, 294 S.C. 475, 366 S.E. (2d) 15 (Ct. App. 1988).

The disputed fence is a chain link fence located on a corner lot. As noted above, the Milner Report and its Supplement strongly recommend against the use of chain link fence in the Historic District. Furthermore, § 5-6120 of the Beaufort Code of Ordinances specifically prohibits the use of fences on corner lots. Thus, there is ample evidence that the fence is both inappropriate and detrimental to the interests of the city.

## IV.

Next, Gurganious claims the BOAR erred in relying on the Supplement to the Beaufort Preservation Manual, as the Supplement had not yet been adopted as a guideline for the BOAR. This argument is manifestly without merit.

In his opening remarks at the February 10, 1993 meeting of the BOAR, Chairman Mike Rainey stated, "As our guidelines we use the *Beaufort Preservation Manual* and the *Beaufort Preservation Manual Supplement*." Chairman Rainey then

quoted a lengthy portion of the Supplement, stating, "When it's an objective nature we refer to pretty much these two manuals as the Bible." Gurganious failed to object to the use of the Supplement at that time, and in fact, he subsequently quoted it and argued from it in the hearing. Indeed, he had since quoted from and relied on the Supplement both before the circuit court and this court.

It is well settled that one cannot present and try his case on one theory and then change his theory on appeal. *McClary v. Witherspoon*, 251 S.C. 523, 164 S.E. (2d) 220 (1968). Furthermore, a contemporaneous objection to a disputed ruling is required to preserve an issue for appellate review. *Cook v. South Carolina Dep't of Highways and Pub. Transp.*, 309 S.C. 179, 420 S.E (2d) 847 (1992) (Issues not timely raised to and ruled upon by trial court will not be addressed on appeal). Here, Gurganious clearly relied on the Supplement during his hearing before the BOAR to further his arguments. As such, he cannot now complain of the BOAR's use of the Supplement in its decision to disapprove the fence.

## V.

Finally, Gurganious claims the BOAR erred by finding the fence was not "grandfathered" under City Code § 5-6108, without regard to the issue of intent to abandon the nonconforming fence. The City of Beaufort Code § 5-6108 has an objective time limitation on the resumption of usage or reconstruction of a partially destroyed nonconforming structure. The failure to rebuild following destruction within the time required within the ordinance is fatal to any claim of grandfathered status. Gurganious argues the BOAR should have applied the common law definition of abandonment as enunciated in *Conway v. City of Greenville*, 254 S.C. 96, 173 S.E. (2d) 648 (1970), rather than the statutory definition in § 5-6108(2) of the Code of Laws for the City of Beaufort. We find no error.

In *Conway*, the Supreme Court defined abandonment of a nonconforming use as "a discontinuance of the nonconforming use with the intent to relinquish the right to so use the property." *Id.* at 105, 173 S.E. (2d) at 653. However, the facts of *Conway* are distinguishable from this case because the court

did not have before it, nor did it address any municipal zoning ordinance providing for a specific time period in which to resume a nonconforming use.

South Carolina Code Ann. Section 5-23-10 provides that "the legislative body of cities and incorporated towns may by ordinance regulate and restrict . . . the location and use of buildings, structures and land for trade, industry, residence or other purposes." Pursuant to this section, the City of Beaufort passed Part Five of Chapter Six of the code of Ordinances, which addressed Planning and Development. In Article G of Part Five, the City established the "General Provisions" for Planning and Development, among which was § 5-6108. That section, entitled "Nonconforming buildings or uses," provided as follows:

> Nonconforming building or land uses are declared by this chapter to be incompatible with permitted uses in the districts involved. However, to avoid undue hardship, the lawful use of any building or land uses at the time of the enactment of this chapter may be continued even though such use does not conform with the provisions of this chapter except that the nonconforming building or land use or portions thereof, shall not be: . . . (2) Reused or reoccupied after discontinuance of use or occupancy for a period of one (1) year or more: . . . (4) Repaired, rebuilt, or altered after damage exceeding sixty (60) percent of its replacement cost at the time of destruction. Reconstruction or repair, when legal, must begin within six (6) months after damage is incurred. The provisions of this section shall not apply to any bona fide residence.

In Article H of Part Five, the City established the BOAR, and assigned it the responsibility of "hear[ing] all applications for permits to build, alter, or demolish any building or structure located in the Historic Beaufort District." As such, the BOAR was a part of the City's zoning scheme, and the General Provisions established in Article G were applicable to it.

Other states have recognized the authority to provide in zoning legislation for the termination of nonconforming uses without regard to intentional abandonment. *See e.g., Cumberland County v. Eastern Fed. Corp.*, 48 N.C. App. 518, 269 S.E. (2d) 672, *review denied*, 273 S.E. (2d) 453 (1980); *Canada's*

*Tavern, Inc. v. Town of Glen Echo*, 260 Md. 206, 271 A. (2d) 664 (1970); *Sun Oil Co. v. Board of Zoning Appeals*, 57 A.D. (2d) 627, 393 N.Y.S. (2d) 760 (1977), *aff'd*, 44 N.Y. (2d) 995, 408 N.Y. S (2d) 502, 380 N.E. (2d) 328 (1978). Though our court has not directly addressed this issue, a landowner was allowed to continue his business in a case involving a similar zoning provision requiring reestablishment within twelve months of vacancy, abandonment, or discontinuance, only because the property was properly treated under another zoning provision, and the twelve-month provision was found inapplicable under the facts of the case. *Union Oil v. City of Columbia Zoning Bd. of Adjustment*, 276 S.C. 678, 281 S.E. (2d) 479 (1981).

The general rationale for such provisions is the recognition that a valid zoning ordinance regulating property must be based upon proper considerations of the public health, welfare, morals and safety. *Rush v. City of Greenville*, 246 S.C. 268, 276, 143 S.E. (2d) 527, 530-31 (1965) ("The authority of a municipality to enact zoning ordinances, restricting the use of privately owned property is founded in the police power."). See generally 101A C.J.S. *Zoning & Land Planning* § 20 (1979) and cases cited therein. Once a valid zoning ordinance is enacted based upon a comprehensive zoning plan, it is generally recognized that nonconforming uses detract from the public purpose to be achieved by the plan. *Bailey v. Rutledge*, 291 S.C. 512, 354 S.E. (2d) 408 (Ct. App. 1987). As such, they are not favored, and they should be made conforming as soon as reasonably possible. *See id.* While a property owner has a constitutionally protected right to continue the use following enactment of a zoning ordinance, provisions terminating the nonconforming use upon destruction of a specified portion of the premises, or upon failure to begin reconstruction within a specified time thereafter are proper, so long as the maximum amount of destruction permitted and the time allowed is reasonable. *See, e.g., Byrd v. City of N. Augusta*, 261 S.C. 591, 201 S.E. (2d) 744 (1974) (Zoning power must be exercised reasonably and not arbitrarily). We conclude the provisions adopted by the City of Beaufort in § 5-6108 are reasonable, and therefore were properly applied by the BOAR without regard to the actual intentions of Gurganious.Accordingly, the judgment is

Affirmed.

HOWELL, C.J., and CONNOR, J., concur.