16740

HODGE v. POLLOCK *ET AL.*

(75 S. E. (2d) 752)

*Messrs. Lyles & Lyles,* of Spartanburg, *for Appellant,*

*Mr. Paul L. Taylor,* of Spartanburg, *for Respondents, Henry E. Plenge* and *Ruth S. Plenge,*

*Mr. John G. Galbraith,* of Spartanburg, *for Respondents, Members of the Board of Adjustment,*

May 4, 1953.

OXNER, Justice.

The question presented on this appeal is whether, upon the record in this case, there are shown the requisite elements which would authorize the Board of Adjustment to grant a variance in the application of a zoning regulation of the City of Spartanburg providing that no building shall be constructed closer to the side line of a lot than six feet, so as to permit a property owner to construct an office building within three and a half feet of such line.

Under the terms of the zoning ordinances of Spartanburg, the Board of Adjustment is authorized to grant "such variance from the terms of this ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of this ordinance will result in unnecessary hardship, and so that the spirit of this ordinance shall be observed and substantial justice done." The power thus conferred upon the Board of Adjustment is in accord with the enabling statute. Section 47-1009(3) of the Code of 1952.

Respondents, Drs. Henry E. Plenge and Ruth S. Plenge, are radiologists. In March, 1949, they purchased a lot in the City of Spartanburg, fronting 50 feet on the south side

of Catawba Street, and having an average depth of approximately 190 feet. Under the zoning ordinances enacted on April 14, 1950, the above lot was included in an area zoned as a "Residence 1 District", and in such a district it was provided that the "least dimension of a side yard shall not be less than six feet." Although zoned for residential purposes, the building inspector has permitted doctors to erect office buildings on Catawba Street across from the Spartanburg General Hospital. Respondents decided to construct on their lot a building in which to carry on their profession. From a multitude of plans used in various parts of the country, they prepared and sent to the General Electric Company, which manufactures $x$-ray and other equipment used by radiologists, a rough drawing of the type of building desired. There is no evidence, however, that the Company was informed of the zoning requirements. In July, 1952, the General Electric Company submitted to respondents plans and specifications deemed suitable for their purposes under which the building would front 35¾ feet on Catawba Street. Respondents then applied to the building inspector of Spartanburg for a permit in which it was stated that the proposed building would be located 3½ feet from the eastern side line and 10¾ feet from the western side line, enabling respondents to have a driveway on the western side of the building. The building inspector declined to issue the permit because the proposed location would violate the side line requirement of six feet. Respondents then filed a petition with the Board of Adjustment seeking a variance. This was opposed by Dr. G. B. Hodge, a surgeon of Spartanburg, who owned and had his offices in a building located on a lot adjacent to the eastern side of respondents' lot. A hearing was had before the Board of Adjustment, at which all parties were represented by counsel and considerable testimony taken. The Board voted unanimously in favor of granting the requested variance but stated no reasons for its conclusion. In due course, Dr. Hodge filed a petition for a writ of certiorari and the matter was heard by the Resident

Judge of the Seventh Circuit on the testimony taken before the Board of Adjustment. He affirmed the decision of the Board. From this order, Dr. Hodge, who claims that his property would be injuriously affected by the variance, has appealed.

The only witness for respondents was Dr. Ruth S. Plenge who, when examined by Mr. Dodge, a member of the Board of Adjustment, testified as follows:

"Mr. Dodge: May I ask what inconvenience it would be if the building were made about two and half feet smaller?

"Dr.. Plenge: It would make the building considerably more inconvenient. After all, the rooms have to be a certain specific size to accommodate the extra equipment; and if the building were built long and narrow, it would, on a resale, depreciate the property and it would be an inconvenience in carrying on the practice.

"Mr. Dodge: What we have to decide, solely, is upon the harm it does to the abutting property owners; and if you could elaborate on the inconvenience, I think it would be very good to get into the record.

"Dr. Plenge: I think the biggest thing is that these rooms are of specific size to accommodate the extra equipment and they have been made as small as they can be to take care of the equipment that has to be used. And if they have to be made smaller, it will decrease the efficiency. After all, General Electric drew the plans up and you can build it like a shotgun if you like, but it will certainly decrease the efficiency of it."

Dr. Plenge was cross-examined at length by counsel for appellant but the foregoing is the only testimony on the issue of unnecessary hardship. No witness from the General Electric Company, or other expert, testified that the building plans could not be rearranged so as to conform to the zoning requirements. Appellant offered several witnesses to the effect that by making the longer dimensions of the rooms run perpendicular to instead of parallel with Catawba Street, a

building with the same facilities could be erected without the necessity of violating the side yard requirement. Among these witnesses was a radiologist who testified: "But I noticed the tables are lengthwise of the building and I do think this: That without inconveniencing them, the tables could run the long way and not inconvenience them. That would make the rooms longer and less wide. In other words, the rooms would be longer toward the length of the lot. I see no reason why it couldn't be done."

Appellant testified that the variance requested would depreciate the value of his property; that a building $3\frac{1}{2}$ feet from his property line would obstruct light and air; and that $x$-ray equipment in such close proximity would constitute a hazard.

It was brought out in the testimony that there was a carport on the western side of appellant's office building, extending at one point within eighteen inches of the property line. In reference to this, the Circuit Judge stated in his order: "There was some discussion by counsel before me as to whether or not this carport was a violation of the zoning ordinance. Such carport was permitted by the building inspector and whether or not it is a violation of the zoning ordinance is not a question before this Court in this case."

Are the facts sufficient to justify the decision of the Board of Adjustment in granting a variance? We had occasion in the recent case of *Talbot v. Myrtle Beach Board of Adjustment,* 222 S. C. 165, 72 S. E. (2d) 66, to discuss the history and principles of zoning. There the Board of Adjustment refused to grant a variance and its decision was upheld. The attack in that case was principally upon the validity of the zoning ordinance as applied to the property involved.

The office of the variance is to permit modification of an otherwise legitimate restriction in the exceptional case where, due to unusual conditions, it becomes more burdensome than was intended, and may be modified

without impairment of the public purpose. *St. Onge v. City of Concord,* 95 N. H. 306, 63 A. (2d) 221. The courts have never undertaken to formulate an all-inclusive definition of "unnecessary hardship". "Although it has been stated that the phrase should be given a reasonable construction, it is recognized that it does not lend itself to precise definitions automatically resolving every case." 58 Am. Jur., Zoning, Section 203. It is generally held that before a variance can be allowed on the ground of "unnecessary hardship", there must at least be proof that a particular property suffers a singular disadvantage through the operation of a zoning regulation. *Hickox v. Griffin,* 298 N. Y. 365, 83 N. E. (2d) 836.

A board of adjustment is vested with a wide discretion in determining whether a variance should be granted in a particular case on the ground of unnecessary hardship. Its decision should be given great weight and the discretion vested in such board should not be interfered with unless arbitrary or clearly erroneous. *Talbot v. Myrtle Beach Board of Adjustment, supra,* 222 S. C. 165, 72 S. E. (2d) 66. "However, the decision of the zoning board will not be upheld where it is based on errors of law, or fraud, or where there is no legal evidence to support it, or where the board acts arbitrarily or unreasonably, or in a discriminatory manner or where, in general, the board has abused its discretion." 58 Am. Jur., Zoning, Section 231. In exercising its discretion, the board of adjustment is not left free to make any determination whatever that appeals to its sense of justice. It must abide by and comply with the standard prescribed by the local ordinance and zoning statutes. *Lee v. Board of Adjustment,* 226 N. C. 107, 37 S. E. (2d) 128, 168 A. L. R. 1. In *Devaney v. Board of Zoning Appeals,* 132 Conn. 537, 45 A. (2d) 828, 829, the Court said:

"To attempt to give to any small group of individuals such as a zoning commission or appeal board the power to determine in the exercise of its unrestricted discretion what uses might be made of the properties in a community would not

only be contrary to sound social policy but clearly unconstitutional. *State v. Stoddard,* 126 Conn. 623, 628, 13 A. (2d) 586. As, however, there may be situations where a literal enforcement of the provisions might result in serious injustice to a particular individual, it is usual to vest in the zoning commission or appeal board power to vary the regulations where there would otherwise be unnecessary hardships or practical difficulties. *Lathrop v. Town of Norwich,* 111 Conn. 616, 620, 151 A. 183; *St. Patrick's Church Corporation v. Daniels,* 113 Conn. 132, 139, 154 A. 343. This is an exceptional power which should be sparingly exercised and can be validly used only where a situation falls fully within the specified conditions."

■ Considering the facts in the light of the foregoing principles, it clearly appears that the circumstances do not justify a variance. There is no showing that the side yard requirement, when applied to respondents' property, becomes arbitrary, confiscatory, or unduly oppressive because of conditions of the property distinguishing it from other properties similarly restricted. Indeed, it does not appear that the plans for the proposed building cannot be satisfactorily rearranged so as to conform to the zoning regulations. About all that we have is what Dr. Plenge characterized as "an inconvenience".

At least one of the members of the Board of Adjustment misconceived the basis upon which a variance may be granted when he stated: "What we have to decide, solely, is upon the harm it does to the abutting property owners." That is not the sole criterion. To allow the members of a board of adjustment uncontrolled discretion in granting variances would enable them to nullify a zoning ordinance by granting repeated variances. The statute authorizing variances serves a useful purpose but the requisite conditions must be met.

We may add that if the side yard requirement creates a general hardship in the area where respondents' property is located, this situation may be remedied by revision of the

regulation, but not by granting a special privilege of a variation to single owners.

The action of the Board of Adjustment is set aside and the order appealed from is reversed.

FISHBURNE, STUKES and TAYLOR, JJ., and G. BADGER BAKER, Acting Associate Justice, concur.