1087

FAIRFIELD OCEAN RIDGE, INC., Respondent v. TOWN OF EDISTO BEACH, Appellant. TOWN OF EDISTO BEACH, Appellant v. FAIRFIELD OCEAN RIDGE, INC., Respondent.

(366 S. E. (2d) 15)

Court of Appeals

476

*Marvin C. Jones*, of *Bogoslow & Jones*, Walterboro, and *William B. Regan*, of *Regan & Williams*, Charleston, *for appellant.*

*Robinson, Craver, Wall & Hastie*, Charleston, *for respondent.*

Heard Dec. 14, 1987.

Decided Feb. 8, 1988.

CURETON, Judge:

The Town of Edisto Beach appeals from the circuit court's reversal of a decision of its Zoning Board of Adjustment. The circuit court ruled Fairfield Ocean Ridge, Inc. was not using its property in a manner prohibited by the City's ordinance and, alternatively, its use constituted a pre-existing, non-conforming use which the ordinance permits to continue. The Town appeals. We reverse.

The Town of Edisto Beach is an island municipality located on the Atlantic Ocean at St. Helena Sound in Colleton County. Fairfield is the owner and developer of certain property located in the town. In connection with the development, Fairfield acquired three tracts of land. The largest of these tracts is zoned as a planned unit development (PUD) and is the principal location of the development. The other two parcels are not contiguous to the larger tract or each other. One of these parcels is a small parcel on the front beach at Edisto and is referred to as the "Cabana" property. This is the property involved in this appeal. There is erected on the Cabana property an irregular shaped structure approximately 37 feet wide by 27 feet deep which has a screened open side facing the ocean.

Fairfield's predecessor in title prepared a Master Land Use Plan for the development which it named "Oristo." This plan was dated December 23, 1980. This plan depicts all three tracts of land and is hereinafter referred to as the Master Plan.

On June 11, 1981 Edisto adopted a zoning ordinance. The ordinance established an Official Zoning Map and declared the map to be part of the Ordinance. Section 305 provides in part:

> No amendment to this Ordinance which involves matter portrayed on the Official Zoning Map shall become effective until after such change has been made on said map.

Section 306 provides:

> [T]he Official Zoning Map ... shall be the final authority as to the current zoning status of land and water areas, buildings, and other structures in the Town.

Section 507 of the 1981 Ordinance deals with PUD districts. It indicates that a PUD exists where the abbreviation "PUD" is indicated on the Zoning Map. It also provides for amendments to the Ordinance for developing PUDs not indicated on the Zoning Map. Subsection (5)(d)(3) deals with development densities of a PUD and provides:

> No individual parcel a [sic] designated in the December 23, 1980 Master Land Use Plan for Oristo shall be devel-

oped to a density exceeding seven units per acre. This density restriction also includes "The Point" (parcel X) and the beach cabana Properties.

The preceding subsection was amended on April 8, 1982 by changing the density from 7 to 10 units per acre. It was again amended on July 12, 1984 by deleting the last sentence and adding "in the PUD" to the preceding sentence so that the Zoning Ordinance read as follows:

No individual parcel as designated in the December 23, 1980 Master Land Use Plan for Oristo shall be developed to a density exceeding ten (10) units per acre in the PUD.

In March 1986 a complaint was filed with the Building Inspector alleging Fairfield was using the Cabana Property for commercial activities[1] in violation of the Zoning Ordinance. In April 1986, the Building Inspector issued his order to Fairfield to discontinue the activities. The decision states the Cabana Property is located in an R-1 district and the activities complained of increased the nonconforming use. The Board of Adjustments upheld the Building Inspector. Fairfield appealed to the circuit court. The circuit court judge held the Cabana Property was and still is zoned PUD under the terms of the Zoning Ordinance. He alternatively ruled that even if the property is now zoned R-1 the Zoning Board erred in finding it was zoned R-1 prior to July 12, 1984, when Section 507(5)(d)(3) of the Ordinance was amended to delete reference to the Cabana from the Ordinance. He further held that even if the Cabana was rezoned R-1 on July 12, 1984, Fairfield is entitled to continue its present use of the Cabana Property as a nonconforming use because the commercial activity was fully in place on July 12, 1984.

Edisto appeals the order of the trial court asserting the trial court: (1) applied the wrong standard in reviewing the Board's decision; (2) erred in finding the Cabana Property has ever been zoned PUD; (3) erred in finding insufficient

---

[1] The alleged activities were: renting of beach chairs, umbrellas and sailboats; offering of sailing lessons, operation of a snack bar and the holding of shore dinners.

evidence to sustain the Board's ruling that Fairfield did not establish a nonconforming use; and (4) erred in ruling on the admissibility of evidence and other miscellaneous matters.

The ordinance under consideration was enacted pursuant to Title 6 of The Code of Laws of South Carolina, 1976. Section 6-7-780 provides that upon appeal of a zoning board's ruling to the circuit court "[t]he findings of fact by the board of appeals shall be final and conclusive on the hearing of such appeal. In determining the questions presented by the appeal the court shall determine only whether the decision of the board is correct as a matter of law." Edisto contends the board's findings of fact concerning the use of the property prior to June 1981 is binding on the circuit court if supported by *any* evidence.

The circuit court disagreed with Edisto for two reasons. First, the court held Sections 6-7-780, as interpreted by Edisto, is an unconstitutional denial of due process. Second, the court held the appropriate standard of review is that announced in *Ex Parte La Quinta Motor Inns, Inc.*, 279 S. C. 598, 310 S. E. (2d) 438 (Ct. App. 1983) (Board's findings upheld if based on sufficient evidence and not arbitrary or clearly erroneous). The court reviewed the evidence and found it did not support the Board's decision.

The *La Quinta* case arose under Title 6 of the Code.[2] ██ The case mentions the standards recited in *Talbot v. Myrtle Beach Board of Adjustment*, 222 S. C. 165, 72 S. E. (2d) 66 (1952) and *Hodge v. Pollock*, 223 S. C. 342, 75 S. E. (2d) 752 (1953) (board findings must be upheld unless found to be arbitrary or clearly erroneous, based on errors of law, fraud or without legal evidence to support them) which were decided under Title 5. Although the Title 5 standard may be reconciled with Title 6, the trial judge here apparently read *La Quinta* as allowing him to make findings based on his own view of the preponderance of the evidence. This is clearly erroneous. The factual findings of the Board

---

[2] The South Carolina General Assembly has adopted two enabling statutes by which local governments may adopt zoning ordinances. Section 5-23-10, *et seq.*, Code of Laws of South Carolina, 1976, and Section 6-7-10, *et seq.*, Code of Laws of South Carolina, 1976. The former statute was adopted in 1924 and relates only to municipal governments. *Holler v. Ellisor*, 259 S. C. 283, 191 S. E. (2d) 509 (1972). The latter statute was adopted in 1967 and applies to both municipal and county governments.

must be affirmed by the circuit court if there is *any* evidence to support them and they are not influenced by an error of law. Section 6-7-780, Code of Laws of South Carolina, 1976 (the findings of fact by the board shall be final and conclusive on the hearing of such appeal); *Bailey v. Rutledge*, 291 S. C. 512, 354 S. E. (2d) 408 (Ct. App. 1987).

The trial court also found that if the review standard set out in Section 6-7-780 of the Code is binding upon the court, then the Section denies Fairfield due process guaranteed by the State and Federal Constitutions. We reject this argument. The requirements of due process were recently stated by our Supreme Court in the case of *Tall Tower, Inc. et al. v. South Carolina Procurement Review Panel, et al.*, 363 S. E. (2d) 683 (S. C. 1987). The opinion states, in part, as follows:

> The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *S. C. Nat'l Bank v. Central Carolina Livestock*, 289 S. C. 309, 313, 345 S. E. (2d) 485, 488, citing *Armstrong v. Manzo*, 380 U. S. 545, 552, 85 S. Ct. 1187, 1191, 14 L. Ed. (2d) 62 (1965). Due process does not mandate any particular form of procedure, but is a flexible concept changing with the circumstances. *S. C. Nat'l Bank v. Central Carolina Livestock, supra.*

This argument presents a novel issue in this state. ■■ The general law is that if a litigant is provided a full and fair hearing on the merits, the Due Process Clause of the Fourteenth Amendment does not mandate appellate review. *Lindsey v. Normet*, 405 U. S. 56, 92 S. Ct. 862, 31 L. Ed. (2d) 36 (1972); *Oaks v. District Court of the State of Rhode Island*, 631 F. Supp. 538 (D.R.I. 1986). The right to appellate review is not a necessary element of due process. *Harlow v. Sargent*, 14 B.R. 267 (D. Vt. 1981). Fairfield does not contend it was denied a fair hearing before the zoning board, but argues the conclusiveness standard in Section 6-7-780 permits a zoning board to make findings wholly unsupported by any evidence. The standard of review established in Section 6-7-780 has been interpreted to require an affirmance of a zoning board decision if supported by any evidence. *Bailey v. Rutledge, supra.* The same standard is established for review of the facts in any law case. There is clearly no merit to this argument.

The parties stipulate that at the time of the hearing in 1986, the Cabana Property was shown on the Official Zoning Map of Edisto as located in an R-1 residential zone. It is also undisputed that except for an amendment which does not affect the subject property, the Zoning Map has not been amended since its adoption in 1981. It is also undisputed that the activities engaged in by Fairfield violate the uses permitted in an R-1 zone unless Fairfield and its predecessors in title established a prior right to use the property in the manner asserted before the zoning of the property.

The trial court held that because Section 507 of the Zoning Ordinance refers to the Master Use Plan for Oristo and because the Master Plan shows the Cabana Property within the PUD, the property is in fact zoned PUD. The court also found an ambiguity between the Zoning Map and the Ordinance and concluded the Ordinance should prevail over the Map. We disagree. Section 301 of the Ordinance makes it clear the boundaries of the zoning districts are as shown on the Official Zoning Map. Section 305 provides as zoning changes are made they shall be entered on the Map and no change shall become effective until noted on the Map. Section 306 provides the Zoning Map "shall be the final authority as to the current zoning status of land. . . ."

Section 507 of the Ordinance deals with densities. While it states PUD density requirements apply to the Cabana Property, construction of that language does not amount to a zoning of the Cabana as "PUD." This is clearly evident from the language of the Section itself which states that PUD zones are established and permitted "[w]here the symbol (PUD) is established on the official Zoning District Map." The Zoning Map clearly shows the Cabana Property in a R-1 zoning district. Even if Section 507 creates an inconsistency, it would not result in the subject property being zoned PUD. The primary consideration in legislative construction is to ascertain the intent of the legislative body enacting the legislation. *Citizens and Southern Systems, Inc. v. South Carolina Tax Commission*, 280 S. C. 138, 311 S. E. (2d) 717 (1984). When interpreting an ordinance, legislative intent must prevail if it can be reasonably discovered in the language used. *Cf. Gambrell v. Travelers Insurance Companies*, 280 S. C. 69, 310 S. E. (2d) 814

(1983). We have no difficulty discovering that the legislative body of the town of Edisto Beach intended the sole reference for determining the zoning status of the Cabana Property shall be the Zoning Map. We hold the trial court erred in finding the subject property was zoned PUD.

We also find error in the trial court's ruling that the ■ evidence was sufficient to establish Fairfield's present use of the Cabana Property commenced prior to the adoption of the Zoning Ordinance and Map in 1981. Manifestly, in making this determination, the trial court weighed the evidence presented before the Zoning Board. While there is room for disagreement over the weight of the evidence, three witnesses testified for Edisto that the challenged activities were not taking place when the Zoning Map was adopted. Although, as found by the court, Edisto's witnesses[3] may not have had as good an opportunity as Fairfield's to observe the activities prior to enactment of zoning, the circuit court could neither judge the credibility of witnesses nor weigh the evidence. Section 6-7-780, Code of Laws of South Carolina, 1976. We therefore hold Fairfield is not entitled to conduct the challenged activities by virtue of a prior nonconforming use.

Fairfield argues in its brief that even if the Cabana Property is in a R-1 district, and even if the commercial activities complained of were not taking place prior to enactment of the Zoning Map, cabanas were permitted in R-1 districts under Section 500(2)(d) of the Ordinance. We are unable to find where this argument was made before the Zoning Board. Further, Fairfield makes no objection to the circuit court's failure to make such a finding or to raise that as an additional sustaining ground in this appeal. Moreover, it is clear that Edisto does not seek to preclude Fairfield from utilizing its property as a cabana,[4] but attempts only to preclude the Cabana's use for the commercial activities at issue. This contention also is without merit.

Having found this case should be reversed on the issues

---

[3] Some of Fairfield's evidence was presented by way of affidavits which were objected to by Edisto.

[4] A cabana is defined in the Ordinance as a beach shelter with an open side facing the sea. The City contends that because Fairfield has screened in the open side, the structure is no longer a cabana.

discussed above, we need not address Edisto's other exceptions.

Accordingly, the order of the trial court is reversed and the matter remanded to the circuit court for the entry of an order consistent with this opinion.

Reversed.

GARDNER and SHAW, JJ., concur.

