23073

Lorna T. COLBERT, Petitioner v. Leonard KRAWCHECK, James J. Bailey, Theresa R. Price, Henry B. Fishburne, Jr., Mrs. John Campbell, Yvonne Evans, Robert F. Rowe, as members of and constituting The Board of Adjustment of the City of Charleston, Respondents, Alanson B. Houghton, Billie F. Houghton and Neil E. Wermuth, Respondents-Intervenors.

(384 S. E. (2d) 710)

Supreme Court

*John M. Bleecker, Jr.*, Charleston, *for petitioner.*

*Robert G. Clawson, Jr.*, Charleston, *for respondents.*

*Bachman S. Smith, III* of *Sinkler & Boyd*, Charleston, *for respondents-intervenors.*

Heard June 7, 1989.

Decided Sept. 5, 1989.

TOAL, Justice:

The sole issue on appeal involves what is the appropriate standard to be used by the City of Charleston's Board of Adjustment when determining whether an adjustment to a boundary line should be granted.

## FACTS

During the summer of 1986, Lorna T. Colbert filed an application with the City of Charleston Planning and Zoning Department, seeking permission to divide her East Bay Street property into two lots. The ordinances of the City of Charleston allow the subdivision of a piece of property into two or more lots when each lot will contain at least 50 feet frontage on a public street and the subdivision is approved by the Planning and Zoning Commission. City of Charleston Zoning Ordinance § 54-55(b) and § 54-48(b) (1986).

At the initial hearing before the Planning and Zoning Commission, the application was denied on the grounds that it would be inappropriate to divide this property because it contained a historic house and garden. After Colbert moved for reconsideration, the Commission granted subdivision approval. It was noted in the minutes of the Commission hearing that the property met all of the standards for subdivision.

Before the plat was recorded, it was discovered that although Colbert's property had been maintained as a single parcel, her deed describes her property as two contiguous lots, 37 and 39 East Bay Street. One has 110.6 feet and the other has 36 feet of frontage of East Bay Street. The Commission determined that because two parcels already existed, Colbert's application was really a proposal to adjust the existing boundary line. Requests for an adjustment of boundary lines between existing lots are within the jurisdiction of the Board of Adjustment pursuant to § 54-48(a) of the Charleston Zoning Ordinance. Therefore, Colbert filed an application with the Board of Adjustment to adjust the existing lot line.

After a lengthy hearing, Colbert's application was denied. The Board's decision was affirmed by the Circuit Court. The Circuit Court found that § 54-48(a), the section discussing the approval of boundary adjustments, did not set forth a standard for the Board's decision and, therefore, it was appropriate to look at the requirements for a variance under § 54-77 of the ordinance and use the standards for granting a variance as the standards for adjusting a boundary line. The court concluded that Colbert had failed to meet the variance requirements and, therefore, affirmed the Board of Adjustment's denial.

Colbert appealed and the Court of Appeals affirmed the Circuit Court. The Court of Appeals found that while the Board could exercise discretion in acting upon an application to adjust a boundary line, it must abide by the standards prescribed in the ordinance. The court noted that because no standards were prescribed for a boundary adjustment, the Circuit Court applied the requirements for granting a variance. The appellate court found that Colbert did not appeal this holding and, therefore, it was the law of the case. The Court of Appeals concluded that Colbert did not make any contention that she met the requirements for a variance.

## DISCUSSION

Colbert contends that it was error for the Board to apply the rules for granting a variance when her plat was in compliance with the ordinance. We agree.

Section 54-48(a) provides that "no adjustment of boundary lines shall be platted of record . . . unless the Board shall have approved the aforesaid adjustment of boundaries." This section, however, does not specify any requirements that must be met for approval to be granted. Therefore, the issue becomes what standard should be used by the Board of Adjustment in determining whether to approve a boundary adjustment.

While the Board contends that the requirements for granting a variance should be substituted, Colbert argues that the design standards for new lots should be applied. Colbert's argument is based on two contentions. First, she argues that where no standards are provided, the Board must look at the ordinance generally to determine if other standards may be applied to the particular situation. The purpose of this process is to prevent the Board from abusing its discretion and making arbitrary decisions.

For support of this argument, Colbert cites *Stevenson v. The Board of Adjustment of the City of Charleston*, 230 S. C. 440, 448, 96 S. E. (2d) 456, 460 (1957) wherein this Court stated: "In exercising its discretion, the board of adjustment is not left free to make any determination whatever that appeals to its sense of justice. It must abide by and comply with the standard prescribed by the local ordinance and zoning statutes."

Colbert contends her proposed lots complied with all prescribed ordinance standards contained in § 54-55, "Design Standards for New Lots." This is the only section in the ordinance that sets forth requirements for footage, street access, etc. Colbert argues that these standards aply to *all* new lots whether they are created as the result of a "subdivision" or an "adjustment" of boundary lines. The Commission specifically found that Colbert's property met all standards for an adjustment because the standards are the same for the design of residential lots.

Colbert further argues that the requirements for a variance were not applicable in this situation and, therefore, should not have been applied. As noted above, the Court of Appeals found that Colbert had not properly appealed this issue and that the application of the variance requirements was the law of the case. We disagree. In her brief to the Court of Appeals, she specifically argued that "[t]he Circuit Judge's egregious error was finding that the rules governing variances or special exceptions had applicability to the case before him." We believe that this contention was adequately supported by her Exceptions 1 and 2. Therefore, we find that this issue was properly preserved and is properly before this Court.

Section 54-2 defines a "variance" as: "Relief from the literal enforcement of this chapter, permitting the use of property *in a manner otherwise forbidden,* granted by the Board of Adjustment upon a finding that the enforcement of this chapter as written would inflict practical difficulty or unnecessary hardship as hereinafter described; . . . ." (Emphasis added.)

Section 54-77 sets forth the requirements for granting a variance:

1. The particular property, because of size, shape, topography or other physical conditions, suffers singular disadvantage through the operation of this chapter, which disadvantage does not apply to other properties in the vicinity; and

2. Because of this disadvantage, the owner is unable to make reasonable use of the affected property; and

3. This disadvantage does not exist because of conditions created by the owner of appellant; and

4. Grant of the variance (a) will not be contrary to the public interest, (b) will not adversely affect other property in the vicinity, and (c) will be in harmony with the spirit, intent and purpose of this chapter.

The variance provisions apply only when an applicant requests something that is not permitted under the ordinance or when the property does not meet standards prescribed by the ordinance. Here, both proposed lots, the residual parcel and the new parcel, will comply with all prescribed standards. Furthermore, Colbert did not request that the property be used "in a manner otherwise forbidden." For example, if the boundary adjustment would result in two lots, which would not comply with the footage requirements, then the variance standards would apply. Therefore, we find that these variance provisions should not have been applied and the lower courts erred in concluding that she had to meet such requirements.

In sum, we find that Colbert's application was for an ■ adjustment of existing boundary lines. Although the Board may have some discretion, it must grant an adjustment when the proposed lots meet all standards prescribed in the ordinance. Although no standards are provided for boundary adjustments, standards are set forth for the creation of lots. Here, both lots which would be created by the adjustment would comply with ordinance standards. Colbert's request does not fall within the parameters of a "variance" and, therefore, it was an error to apply those requirements. A review of the record suggests that the Board's decision was the result of arbitrariness and capriciousness and was influenced by the opposition espoused by Colbert's neighbors.

For the reasons discussed above, the Court of Appeals, the Circuit Court and the Board are reversed and the Board is directed to grant appellant's application.

GREGORY, C. J., and HARWELL, CHANDLER and FINNEY, JJ., concur.