2219

SEA ISLAND SCENIC PARKWAY COALITION, Beaufort Montessori School, The South Carolina Coastal Conservation League, Inc., Peters' Boatyard, Frederick J. Peters, Jr., and Linda Peters, Appellants v. BEAUFORT COUNTY BOARD OF ADJUSTMENTS AND APPEALS and Branch Development, Inc., Respondents.

(449 S.E. (2d) 254)

Court of Appeals

*Philip L. Fairbanks* of *Fairbanks & Lindsay*, Beaufort, *for appellants.*

*Ladson F. Howell* of *Howell, Gibson & Hughes* and *William B. Harvey, III* of *Harvey & Battey*, Beaufort, *for respondents.*

Submitted May 10, 1994.

Decided Sept. 6, 1994; Reh. Den. Oct. 19, 1994.

CURETON, Judge:

Appellants, Sea Island Scenic Parkway Coalition, and others, appeal from a decision of the circuit court affirming a decision of the Beaufort County Board of Adjustments and Appeals (Board), a body created pursuant to the provisions of Section 6-7-740 *et seq.*, S.C. Code Ann. (1976 & Supp. 1993). We affirm in part, reverse in part and remand.

The facts are not seriously in dispute. The developer, Branch Development, Inc. (Branch), filed a preliminary application with the Beaufort County Development Review Committee (DRC), the approving authority,[1] for a development permit to construct a "Publix Supermarket" on a 6.4-acre site Branch had contracted to purchase. The application was disapproved by DRC because the plan (1) required excessive tree removal, (2) the proposed highway access did not meet county standards, (3) the retention areas were in the wrong places, and (4) the parking areas were excessive. In an appeal to the Board, the plan was approved. The appellants then appealed to the circuit court which affirmed the Board. The only issue addressed in this majority opinion is whether the trial

---

[1] Actually, the application was first made to the Zoning and Development Administrator. However, Section 6.4 of the Ordinance requires approval by the DRC before the Administrator could issue the permit. Additionally, Section 7.9 of the Ordinance establishes a procedure for a public hearing before the DRC when "the issues raised by the proposed development, in the judgment of the Development Review Committee, have sufficient County-wide impact as to warrant public discussion." A public hearing was held in this case.

court erred in affirming the Board's finding that Branch's development plan did not require the removal of an excessive number of protected trees in violation of the Beaufort County Zoning and Development Standards Ordinance. The majority concurs in and adopts the analysis and disposition of all other issues contained in Judge Goolsby's concurrence and dissent. Specifically, we adopt Parts I, II, IV, V and VI of Judge Goolsby's concurrence and dissent.

Contrary to the findings of the DRC, the Board found "[t]he tree removal proposed by Branch's plan is not 'excessive' as a matter of law, either as to the number or type of trees." The board also concluded "[t]he applicable provisions of the [Ordinance] authorize approval of development which involves removing not more than 75 percent of the protected trees on the site." In the appellants' petition for review to the circuit court, they argue "the destruction of 47 [of 89] live oak trees . . . is contrary to the [Ordinance]" and would impair "the purpose and intent of the [Ordinance]." They also state the Board "acted in this matter in an arbitrary, capricious and unlawful manner, without substantial evidence, such that its decision is void." In ruling on the petition for review, the trial court found "[t]he tree removal proposed by Branch's plan is not "excessive" as a matter of law, either as to the number or type of trees."

Ordinarily, findings of fact made by a zoning board of adjustments are final and conclusive on the circuit court and on this court if there is any evidence in the record to support them and they are not influenced by error of law. *National Advertising Co. v. Mount Pleasant Bd. of Adjustment,* — S.C. —, —, 440 S.E. (2d) 875, 876 (1994) (citing *Fairfield Ocean Ridge, Inc. v. Town of Edisto Beach,* 294 S.C. 475, 480, 366 S.E. (2d) 15, 18 (Ct. App. 1988)). In *Fairfield,* however, we stated that where an appeal presents the question of whether a particular use[2] is permitted under an ordinance, the resolution of that question is left to the sound discretion of the Board, which discretion will not be disturbed on appeal unless arbitrary or clearly erroneous. *Fairfield,* 294

---

[2] The ultimate question presented here is whether the land in question may be used for a supermarket in accordance with the plans presented. However, in order to decide that question, construction of the ordinance is necessary to determine its requirements.

S.C. at 479-482, 366 S.E. (2d) at 18-19; *Bishop v. Hightower*, 292 S.C. 358, 356 S.E. (2d) 420 (Ct. App. 1987). Finally, while the circuit court's and our scope of review is narrow when reviewing the Board's factual findings, a broader and more independent review is permitted when the issue concerns the construction of an ordinance. 83 Am. Jur. (2d) *Zoning and Planning* § 1054 (1992); 62 C.J.S. *Municipal Corporation* § 442 (1949) (The proper construction of an ordinance is a question of law).

Section 6.5.1 of the Ordinance provides that a development plan may be approved if the plan complies "as a whole" with the provisions of Articles Four and Five of the Ordinance. Section 6.7 provides that the DRC "shall deny approval of a development plan only if it finds the proposed development does not comply with the *expressed provisions* of the Ordinance." (Emphasis added.) What then are the "expressed provisions" of the Ordinance with respect to the removal of protected trees?

The appellants argue Section 5.2.7 of the Ordinance contains three separate provisions affecting the removal of trees: one for trees in general, one for trees over eight inches in diameter and a third for specific "endangered or valued" trees, into which classification live oak trees are included. They further argue the standard applicable for the removal of trees in each category is different. Particularly, they argue that the language "endangered or valued trees will not normally be permitted [to be removed]" means that the removal of live oak trees is totally prohibited by the Ordinance. Thus, a plan of development requiring the removal of even one live oak tree over eight inches in diameter requires a developer obtain a variance from the Board of Adjustment. We disagree with such an interpretation of the Ordinance.

Section 7.5.2.3(C) states the requirements for a preliminary application for a development permit and Section 7.5.2.3(C)(16) requires the application be accompanied by a "Tree Survey" showing the "trees proposed for removal." Section 5.2.7(C) requires the survey include "all trees of the applicable size and larger" located within the area to be developed and the "size and location" of the trees must "be indicated on the site plan." This requirement is waived, however, when the "preliminary site evaluation by the applicant reveals the abil-

ity to accomplish the proposed project without removal of any trees eight (8) inches in diameter or larger."

We agree with Judge Goolsby that the Ordinance establishes a procedure that permits the DRC and the Board on appeal to approve a development plan although it proposes the removal of some protected live oak trees. In our view, the fact that Section 5.2.7(B) says that approval to remove endangered trees will not normally be granted simply limits the discretion of the DRC initially, and the Board on appeal, in approving a development plan where endangered trees are proposed for removal. We do not read this section as prohibiting the DRC and Board from approving a plan involving the removal of *any* endangered trees. Each part of a statute should be given effect and each word given its plain meaning if this can be accomplished by any reasonable construction. *Higgins v. State,* 307 S.C. 446, 415 S.E. (2d) 799 (1992). To interpret the Ordinance to totally prohibit the removal of even one live oak tree as claimed by the appellants, or to permit the removal of up to seventy-five percent of such trees as contended by respondents, would nullify the Ordinance's expressed mandate to the DRC and Board to severely limit the number of trees permitted to be removed when approving development plans.[3]

We have searched the appellants' brief for an argument for reversal of the trial court based on the proposition the Board's approval of the development plan was arbitrary, clearly erroneous and/or influenced by error of law. Under their argument Number III, the appellants state:

> [The Board] nevertheless concluded that ". . . [t]he tree removal proposed by the Developer's plan is not 'excessive' as a matter of law, either as to the number or type of trees" (reference to record omitted). Since no finding of fact addresses the issue of "endangered or valued trees" as defined in the [ordinance], this conclusion of law is simply not supported by any evidence and is arbitrary, capricious and clearly erroneous. *Hodge v. Pollock,* 75 S.E. (2d) 752 (1953).

---

[3] Section 7.5.3.1(B)(10) states "It is the expressed intent of this Ordinance that every effort be made in the design and layout of development projects to conserve as many trees as possible."

We hold that this argument preserves the issue of whether the Board's approval of the development plan as it pertains to the live oak trees is arbitrary, capricious, clearly erroneous and/or influenced by error of law. We further hold that the Board's decision to permit removal of over 52 percent of the protected live oak trees was arbitrary and clearly erroneous in view of the clear mandate in the Ordinance to "not normally" permit *any* endangered trees to be removed. This is especially so in view of the fact that the Board enumerated no circumstances surrounding this development that would compel it to deviate from what is normal or usual in approving plans requiring the removal of endangered trees. Finally, as we read the Board's conclusions of law, they make no distinction between protected live oak trees and other protected trees. The board appears to have concluded it had authority to approve for removal up to 75 percent of all endangered and valued trees. Such a conclusion is influenced by an error of law.

Accordingly, we reverse the order of the trial court to the extent it affirmed the Board's decision to permit the removal of the 47 live oak trees from the site proposed for development.

The judgment is

Affirmed in part, reversed in part, and remanded.

CONNOR, J., concurs.

GOOLSBY, J., concurs and dissents in separate opinion.

GOOLSBY, Judge (concurring in part and dissenting in part):

The opinion that follows was originally drafted to serve as the majority opinion. Because neither Judge Cureton nor Judge Connor fully concurs in Part III thereof, the opinion, with minor modifications, is now a concurring and dissenting opinion. Part III contains the dissenting portion.

This is an appeal from an order of the circuit court upholding the decision of the Beaufort County Board of Adjustments and Appeals that, pursuant to an appeal by Branch Development, Inc., reversed a decision of the Beaufort County Development Review Committee. Sea Island Scenic Parkway Coalition, Beaufort Montessori School, the South Carolina Coastal

Conservation League, Peters' Boatyard, Frederick J. Peters, Jr., and Linda Peters appeal. I would affirm.

In 1992, Branch Development filed with the Committee a preliminary application for approval of a development plan to construct a Publix Supermarket on a six-acre parcel it contracted to purchase on Lady's Island. Among other things, the plan proposed to remove from the site a large number of trees, including live oaks, and sought access along U.S. Highway 21.

The Committee disapproved the application, finding: (1) the plan required excessive tree removal; (2) the plan's proposed highway access did not meet county standards; (3) the retention areas proposed by the plan were in the wrong place; and (4) the parking areas proposed by the plan were excessive.

Branch Development appealed the Committee's decision to the Board. Branch Development also sought certain variances.

The Board reversed the Committee's decision and approved, subject to certain modifications, Branch Development's plan for the development of the site. It also granted Branch Development several variances from the standards prescribed by the Beaufort County Zoning and Development Standards Ordinance (1990).

Sea Island Scenic Parkway Coalition and the others appealed to the circuit court. The circuit court upheld the Board's decision.

I.

The appellants contend Branch Development lacked standing to seek a hardship variance because it is the holder of a mere contract to purchase land. This contention has no merit.

■ Branch Development is not a holder of an option to purchase, rather it is a contract vendee. As a contract vendee, Branch Development has standing to seek a hardship variance. 83 Am. Jur. (2d) *Zoning and Planning* § 901, at 756 (1992); *see* W.C. Crais, III, Annotation, *Zoning: Who May Apply for Variance, Special Exception, or Use Permit, or Appeal from Denial Thereof,* 89 A.L.R. (2d) 663 (1969) (contract vendees under conditional or unconditional contracts are ordinarily granted standing to seek variances).

Moreover, section 7.5.2 of the Zoning and Development

Standards Ordinance expressly allows a "developer" to seek approval of a development plan. Branch Development is a "developer" within the meaning of section 7.5.2.

## II.

The appellants argue Branch Development did not quality for a variance because it had actual or constructive prior notice of the nonconforming character of the property. This argument need not be addressed because it is not properly before the court. "The record reflects the circuit court did not explicitly rule on [this] argument. . . ." *Noisette v. Ismail,* 304 S.C. 56, 58, 403 S.E. (2d) 122, 124 (1991); *see Talley v. S.C. Higher Educ. Tuition Grants Comm.,* 289 S.C. 483, 347 S.E. (2d) 99 (1986) (an issue raised to but not ruled on by the trial court is not preserved and the complaining party must move before the trial court to amend the judgment pursuant to Rule 59(e), SCRCP).

## III.

The appellants argue the Zoning and Development Standards Ordinance prohibits the removal of "endangered or valued trees," including live oak trees, in the absence of a variance and, therefore, a finding pursuant to S.C. Code Ann. § 6-7-740(2) (1977) was required for their removal. The ordinance, however, does not require a request for a "variance" to remove endangered or valued trees, including live oak trees, as part of a development plan; rather, the ordinance offers a specific procedure by which a developer may seek the Board's approval to remove endangered or valued trees, such as live oaks. *Cf. Colbert v. Krawcheck,* 299 S.C. 299, 384 S.E. (2d) 710 (1989) (a request for adjustment of existing boundary lines is not a request for a "variance"). Section 6-7-740(2), then, has no application to Branch Development's plan to remove the trees in question because no variance is necessary for it to do so. The procedure is set forth in section 5.2.7 of the Zoning and Development Standards Ordinance.[1]

---

[1] Section 5.2.7 of the Beaufort County Zoning and Development Standards Ordinance (1990) provides in pertinent part:

> *Protection of Natural Resources* No development shall be undertaken except in conformance with the provisions of this section.
> (A) *Land-Clearing Prohibited* The cutting of trees for the sole purpose of clearing land . . . shall be prohibited.

Branch Development followed the procedure prescribed by the ordinance when it obtained the approval of the Board for the removal of a number of protected trees, including live oaks. The Board made several findings of fact in support of its decision to grant approval for the trees' removal[2] and its findings of fact in this regard enjoy evidentiary support in the record.[3]

## IV.

The appellants argue the record does not contain facts ■ sufficient to support the requirements for the variances the Board granted to Branch Development. This argument lacks merit. The Board made explicit findings of fact to support each of the requirements called for by § 6-7-740(2) and section 7.8.1.5(G) of the Zoning and Development Standards Ordinance. Neither the statute nor the ordinance requires, as the appellants appear to urge, additional findings by the Board that an applicant for a variance did not have either actual or constructive knowledge of unique physical conditions associated with the property and that enforcement of a zoning ordinance would deprive the owner of a reasonable return from the property.

---

(B) *Protection of Trees* No person shall . . . remove any disease-free tree with a trunk of eight (8) inches or more in diameter or twenty-five (25) inches in circumference . . . in conjunction with . . . development activity . . . until such removal has been approved in accordance with the provisions of this Ordinance.

. . . .

Removal of endangered or valued trees will not normally be permitted. Trees included in this category are:

. . . .

(5) Live Oak (Quercus virginiana)

. . . .

As a condition of approval from this Ordinance, the applicant may be required to plant replacement trees for trees approved for removal as part of the final plan.

[2]The Board made the following findings of fact regarding the issue of the tree's removal:

1. The Developer's plan for the Project involves removing from the development site a total of 232 of the 364 trees having a diameter of eight inches or more (trees of such size being hereinafter referred to as "protected trees"). The trees to be removed include 47 of the 89 protected live oaks on the site.

2. The Developer's plan thus involves removing a total of 63.7 percent of the protected trees presently on the development site.

## V.

The appellants argue the Board erred in granting to Branch Development a variance from the requirement of 500 feet between access points along U.S. Highway 21 because "nothing about the physical condition of the property [makes] it any different from any other property in the vicinity." In other words, they argue the variance is unwarranted because the property is not unique in having less than 500 feet of frontage on Highway 21. This argument also lacks merit.

The Board grounded its decision to grant the variance on a feature other than the amount of highway frontage along Highway 21. It found access from Highway 21 was necessary to relieve traffic flow in front of the proposed store and to prevent congestion in the parking lot because the development site is located between "three busy thoroughfares and at the intersection of Highway 21 and [S.C. Highway] 802."

## VI.

This court need not treat the appellants' contentions that the Board erred when it considered the date the subject prop-

---

3. The "Tree Removal Ratio" presented to the Board by the Developer's representative shows that the Developer's plan would preserve over 51 percent of the total bulk (trunk area measured in square inches) of all protected trees on the development site and would preserve over 76 percent of the bulk of all protected live oaks on the site.

4. Under the Developer's plan, only one live oak to be removed exceeds 500 square inches in trunk area and no live oak to be removed exceeds 1,000 square inches in trunk area.

5. Approximately 34 percent of the development site will consist of open space, including preserved and newly planted trees, grass, shrubbery and other landscaping. This is more than twice the amount of open space required for such a development under the County's Zoning and Development Standards Ordinance (the "DSO").

6. Prior to submitting its preliminary application to the [Development Review Committee], the Developer revised its plan by moving the grocery store building footprint approximately 30 feet closer to Route 802, solely in order to preserve a number of large, protected live oak trees on the northeastern portion of the site.

7. The Developer's plan, as submitted to the [Development Review Committee], provides for the planting of 39 new trees.

³Branch Development submitted eight detailed surveys regarding the trees on the property, including live oak trees that have a diameter of eight inches or more. The surveys list each tree on the property and supply information regarding each tree's diameter, which the surveys express in inches, and each tree's area, which the surveys express in square inches. They also

erty was platted and when it considered the ability of Branch Development to put the subject property to its "highest and best" use. Because the circuit court did not address these issues, this court cannot do so. *Noisette*, 304 S.C. at 58, 403 S.E. (2d) at 124; *Talley*, 289 S.C. at 487, 347 S.E. (2d) at 101.

I would affirm.

---

identify the trees by type, listing them as being either pine trees, live oak trees, water oak trees, palm trees, cedar trees, gum trees, dogwood trees, or hickory trees. For example, one survey indicates there are seven cedar trees, reflects four are to be removed, and shows 541.7 square inches of cedar trees out of a total of 939.9 square inches are to remain.

In its opinion, the majority holds the Board's decision to permit the removal of 52 percent of the protected live oak trees "was arbitrary and clearly erroneous." With all due respect to the majority, this holding seems itself "arbitrary and clearly erroneous," especially in view of the findings made by the Board regarding the "total bulk" of "all protected trees" and "all protected live oaks" that will remain on the site and the tree surveys that support the Board's findings.

The majority, totally ignoring the tree surveys that support the Board's findings, "reverse[s] the order of the trial court to the extent it affirmed the Board's decision to permit the removal of the 47 live oak trees from the site proposed for development." What the majority does not tell the Board is how many of these trees the Board can approve for removal and what particular guidelines the majority thinks the Board ought to follow. These omissions are patently unfair and result in the Board having to engage in guesswork. Would the majority approve the removal of 46 live oak trees or perhaps 40, 27, 12, or 3? If so, why? Again, with all due respect to the majority, I think it owes the Board some guidance regarding what the Board can do and how the Board can go about doing it.