24195

L.B. STANTON, Jr., Appellant v. The TOWN OF PAWLEYS ISLAND; Ivan Hill, in his official capacity as Pawleys Island Building Inspector; Cecil Tallevast, in his personal capacity as an individual acting under color of state law; and other persons in their individual or official capacities not yet ascertained or identified, Respondents.

(455 S.E. (2d) 171)

Supreme Court

*M. Baron Stanton,* of *Stanton Law Offices, P.A.,* Columbia, *for appellant.*

*Joseph P. McLean* of *Clarke, Johnson & Peterson, P.A.,* Florence, *for respondents.*

Heard Jan. 4, 1995.

Decided Feb. 13, 1995.

WALLER, Justice:

Appellant Stanton appeals the denial of an application for a

building permit to repair damage to his beach house. We reverse.

## FACTS

In 1969 Stanton built an ocean-front house on Pawleys Island. The house had two bedrooms, a bath, and a small kitchen on the lower, "grade," level. The upper level included a living room and four bedrooms. The two levels were connected by an external stairway.

The lower level of the house was substantially damaged by Hurricane Hugo in September of 1989, as was the roof and front porch. However, the house, as a whole, did not sustain more than 50% damage.

Stanton applied for a building permit to repair the damage to the house. His application was denied by the building inspector pursuant to Pawley Island's Flood Damage Prevention (Ordinance), which was enacted February 28, 1989. Stanton appealed to the Zoning Board, which upheld the denial of the permit. The Circuit Court affirmed.

## ISSUE

Was Stanton's application for a building permit properly denied?

## DISCUSSION

Stanton's house is located in a "Coastal High Hazard Area (V-Zone)." The Ordinance prohibits construction in V-Zone areas below "the lowest floor":

> (4) *Coastal High Hazard Areas (V-Zone)*—Certain areas located within boundaries of special flood hazard established in Article 3, Section B, are areas designated as Coastal High Hazard Areas. These areas have special flood hazards associated with high velocity waters from tide surge and hurricane wave wash, therefore, the following provisions shall apply:
>
> (a) All buildings or structures shall be located landward of the reach of the mean high tide.
>
> (b) All buildings or structures shall be elevated so that the bottom of the lowest supporting horizontal member is located no lower than the base flood elevation level,

with all space below the lowest supporting member open so as not to impede the flow of water. Breakaway walls may be permitted and must be designed to wash away in the event of abnormal wave action and in accordance with Article 5, Section B(4).

\* \* \* \* \* \*

(h) Non supporting breakaway walls, open lattice-work, or mesh screening shall be allowed below the base flood elevation provided they are not part of the structural support of the building and are designed so as to break-away, under abnormally high tides or wave action, without damage to the structural integrity of the building on which they are to be used. . . .

(i) If breakaway walls are utilized, such enclosed space shall not be designed to be useable for human habitation, but shall be designed to be useable only for parking of vehicles, building access, or limited storage of maintenance equipment used in connection with the premises.

\* \* \* \* \* \*

(l) Any alteration, repair, reconstruction, or improvement to a structure shall not enclose the space below the lowest floor except with breakaway walls as provided for in Article 5, Section B(4)(h) and (i).

Article 5, § B(4) (Emphasis added).

Provisions of the Ordinance relating to areas other than the V-Zones specifically state that they are applicable to "new construction or substantial improvement."[1] See §§ B(1)(2) and (3). However, the V-Zone section does not contain such a restriction.

Prior nonconforming uses are "grandfathered" into the Ordinance pursuant to Pawleys Island Zoning Ordinance § 400.3 (Zoning Ordinance), which provides that nonconforming uses cannot be rebuilt if they are more than 50% destroyed.

The building inspector found that: (1) the Ordinance prohibited Stanton from reconstructing the lower, ground-level living quarters; and (2) the lower level, in and of itself, constituted a separate use from the rest of the house. Therefore, al-

---

[1] Substantial improvement is defined as repairs which equal or exceed 50% of the market value of the structure.

though the entire house was not destroyed by more than 50%, the complete destruction of the lower level rendered it ineligible for reconstruction. The Zoning Board upheld the decision of the building inspector and the Circuit Court affirmed.

The factual findings of the Board must be affirmed by the Circuit Court if they are supported by any evidence and not influenced by an error of law. *Fairfield Ocean Ridge v. Town of Edisto Beach*, 294 S.C. 475, 366 S.E. (2d) 15 (1988).

First, we agree that the Ordinance, by its clear language, prohibits the construction of any ground-level living quarters in the V-Zone areas and is not restricted to new construction or substantial improvements in the V-Zone areas. *Miller v. Doe*, 312 S.C. 444, 441 S.E. (2d) 319 (1994) (It is well settled that words of a statute will be given their plain and ordinary meaning). However, we disagree that lower level, as part of the entire structure of the house, can be severed from the upper level so that it is not "grandfathered" into the Ordinance as a prior nonconforming use.

The ordinance defines structure as "a walled and roofed building that is principally above ground. . . ."

Accordingly, the entire house, both upper and lower levels, in one structure. The issue of whether the nonconforming use can be separated from the entire structure is novel to this Court. However, as a general proposition:

> An ordinance which prohibits reconstruction of a nonconforming building which has been damaged in excess of a prescribed amount **does not apply to a conforming building which houses a nonconforming use. Such a building may be restored as of right**. However, a destroyed building cannot be rebuilt to accommodate a different nonconforming use.

83 Am. Jur. (2d) *Zoning and Planning* § 681 (1992) (Emphasis added). *See also Yokley, Zoning Law and Practice* § 22-11 (1979).

Thus, the lower level of Stanton's house does not constitute a separate nonconforming use from the single structure of the entire house. *See Fayette County v. Seagraves*, 245 Ga. 196, 264 S.E. (2d) 13 (1980) (For the purpose of determining whether a mobile home was 75% de-

stroyed, the property owner could include the market value of the septic tank, well pump and utility connections which were not destroyed by the fire); *Krul v. Board of Adjustment of City of Bayonne*, 122 N.J. Super. 18 298 A. (2d) 308 (1972) *affirmed* 126 N.J. Super. 150, 313 A. (2d) 220 (1973) (Where fire totally destroyed one of a complex of nonconforming buildings, court held that nonconforming use as a whole was only partially destroyed; therefore, replacement of destroyed building was permitted); *State v. Steinke*, 7 Wis. (2d) 275, 96 N.W. (2d) 356 (1959) (Where one of many buildings in nonconforming camp was destroyed by fire, court held that 50% rule applied to camp as a whole, not just single building).

Accordingly, the building inspector and Zoning Board erred, as a matter of law, in severing the lower level of Stanton's house from the entire structure and assessing the percentage of destruction based upon only the lower level and not the entire house. Since it is uncontroverted that, as a whole, the house was not more than 50% destroyed, it is a prior nonconforming use pursuant to Zoning Ordinance § 400.3 and may be repaired. The Order of the Circuit Court affirming the denial of Stanton's application is reversed.

Reversed.

FINNEY, C.J., TOAL and MOORE, JJ., and A. LEE CHANDLER, Acting Associate Justice, concur.